United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 19, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

————————

No. 05-11273

————————

ESSIE TURNER,

Plaintiff - Appellant - Cross - Appellee,

versus

BAYLOR RICHARDSON MEDICAL CENTER, also known as Richardson Medical Center Foundation; RICHARDSON HOSPITAL AUTHORITY,

Defendants - Appellees - Cross - Appellants

Appeals from the United States District Court
For the Northern District of Texas

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Essie Turner ("Turner") appeals the district court's dismissal of her claims against Richardson Medical Center Foundation ("Foundation") and its grant of summary judgment in favor of Richardson Hospital Authority ("RHA") on her Title VII racial discrimination and retaliation claims against it. RHA and the Foundation (collectively, "Appellees") cross-appeal the district court's denial of their motion for award of attorney's fees. We affirm.

I

Turner is an African-American female. RHA is a governmental subunit of the State of Texas and operates a general hospital in Richardson, Texas. The Foundation is a nonprofit Texas corporation that coordinates fundraising activities for RHA and publicizes the availability of the RHA's services to the community. The Foundation's Board of Directors and officers are not affiliated with RHA and are members of the community who voluntarily serve without pay.[1]

RHA hired Turner as a secretary in June 1999. Although Turner was officially employed by RHA, her secretarial services benefitted the Foundation. Turner was primarily responsible for preparing weekly reports on fundraising activity, which were distributed to several Foundation officers. At no time during Turner's employment did more than two RHA employees perform services for the Foundation.

Initially, Turner was supervised by Ed Foulk, an RHA employee who in turn reported to RHA's Chief Financial Officer, Ed Berry. Foulk was terminated in June 2001, leaving Turner as the only RHA employee performing services for the Foundation. From June 2001 to June 2002, Turner was nominally supervised by Boring. Turner's work reviews from this period were generally positive and she received a merit-based raise and bonus. However, Boring testified that some Foundation board members complained about the timeliness and accuracy of her work. Further, during this time Turner was warned about the need to improve her organizational skills, cease excessive personal phone use, and learn to use Microsoft's Excel spreadsheet software.

In January 2002, RHA hired Mary Colston, a Caucasian female, to fill the position of

---

[1]RHA's Chief Executive Officer, Ronald L. Boring, attends the Foundation's Board of Directors meetings in an ex-officio capacity.

Foundation Director and serve as Turner's direct supervisor. Within several weeks, Colston and Turner's working relationship began deteriorating. According to Appellees, the difficulties arose and Turner was ultimately dismissed because Turner repeatedly failed to complete her work in an accurate and timely manner, was chronically tardy and otherwise failed to maintain her prescribed work schedule, engaged in excessive personal telephone and email use during business hours, and was insubordinate to Colston.

Turner denies Appellees' account of her work performance. Instead, Turner contends that the difficulties and her eventual discharge were a result of racial discrimination. Turner alleges that Colston made a series of racially insensitive or derogatory remarks to her during the course of her employment. Specifically, Colston allegedly discussed volunteer work she had done with inner-city children, repeatedly referring to them as "ghetto children". When Turner told Colston that she did not want to hear these stories, Colston stopped mentioning them. Later, when Turner mentioned to Colston that she was considering taking college classes, Colston allegedly told Turner that she had previously worked at a university where African-American students attended evening classes because they could not qualify for regular admission. Turner also felt that Colston exhibited surprise or disdain when she learned that Turner shopped at an upscale shopping mall, drove a Volvo, and had a son that bought and sold cars as a hobby. However, Turner concedes that at no time during her employment did she complain to Boring or other RHA employees about racial discrimination or harassment. Nor did she avail herself of RHA's in-house EEOC procedure, anonymous hotline, or hospital grievance procedure for dealing with workplace discrimination.

In March 2002, Colston notified Boring and RHA's Human Resources Representative, Connie Wright, of her dissatisfaction with Turner's workplace behavior and performance. Shortly thereafter,

Turner emailed Boring and Wright to complain about Colston's treatment of her during a dispute over a project, but did not mention race. After a meeting was held between Colston, Wright, and Turner, Turner was placed on administrative suspension. Five days later, RHA terminated Turner. Her position was filled by Jenna Holtz, a Caucasian female from a personnel-staffing agency.

Turner later filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Turner a Notice of Right to Sue. Turner then filed suit against Appellees in district court, alleging racially discriminatory discharge, creation of a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1991 and 42 U.S.C. § 1981. Appellees moved for summary judgment on all claims. Turner then filed a declaration with her Response to Appellees' Motion for Summary Judgment. Appellees moved to strike Turner's declaration, arguing that it was introduced in bad faith and contradicted her prior deposition testimony. Appellees also moved for an award of the attorney's fees incurred in responding to Turner's declaration.

The district court dismissed all claims against the Foundation as a matter of law and granted summary judgment in favor of RHA on the remaining claims against it. The district court then denied Appellees' motion to strike as moot and denied the motion for award of attorney's fees. Turner appealed. Appellees cross-appealed the denial of their motion for award of attorney's fees.

We review *de novo* the district court's ruling on a motion for summary judgment, applying the same legal standard as the district court in the first instance. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408 (5th Cir. 2002). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c); *see also Wyatt*, 297 F.3d at 408-09. When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, we "draw all reasonable inferences in favor of the nonmoving party." *Id.*; *Wyatt*, 297 F.3d at 409. However, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Turner first argues that the district court erred in dismissing her claims against the Foundation as a matter of law. As Title VII prohibits discrimination in the employment context, *see* 42 U.S.C. § 2000e-2(a), 2000e-5, generally only employers may be liable under Title VII. *See Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462 (5th Cir. 2002). In an attempt to bring her Title VII claims against both the Foundation and RHA, Turner argued in her Response to Appellees' Motion for Summary Judgment that the Foundation and RHA could be considered a single entity under an "integrated-enterprise" theory of enterprise liability. The district court held that the Foundation and RHA were not a single integrated enterprise and dismissed Turner's claims against the Foundation as a matter of law.[2] In her Motion for New Trial, Turner argued for the first time that the Foundation and RHA could be considered a single entity under a "joint-employer" theory of liability. The district court held that this argument was waived due to Turner's failure to raise it prior to the entry of

---

[2]Appellees argued that Turner waived the integrated-liability argument by failing to raise it prior to her response to the summary judgment motion. However, the district court declined to address this point.

judgment.

On appeal, Turner argues that the district court erred in finding that Turner was not an employee of the Foundation under either an integrated-enterprise or joint-employer theory of enterprise liability.[3] Appellees maintain that Turner waived the joint-employer argument, and, regardless, that Turner was not an employee of the Foundation under either theory of liability.

We generally evaluate Title VII employer status under the four-part *Trevino* test, which involves consideration of (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002) (citing *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). We place "highest importance on the second factor, rephrasing and specifying it so as to boil down to an inquiry of 'what entity made the final decisions regarding employment matters related to the person claiming discrimination.'" *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986) (quoting *Odriozola v. Superior Cosmetic Distributors, Inc.*, 531 F.Supp. 1070, 1076 (D.P.R. 1982)).

In making her integrated-enterprise argument, Turner implies that RHA and the Foundation shared common control over her employment. However, the record clearly belies this suggestion. Turner was both hired and fired by RHA. Turner was never paid, supervised, or disciplined by the Foundation. Turner's supervisor, Colston, was an RHA employee who reported to Boring, RHA's CEO. RHA, then, clearly "made the final decisions regarding employment matters related" to

---

[3] Turner also advances, for the first time on appeal, an argument that the Foundation was her employer under the "hybrid test" theory of enterprise liability established in *Lyes v. City of Riviera Beach*, 166 F.3d 1332 (11th Cir. 1999). It is well settled that we do not consider issues raised for the first time on appeal. *See Elvis Presley Enterprises, Inc. v. Capece,* 141 F.3d 188, 192 n.2 (5th Cir. 1998). Therefore, this argument is waived.

Turner. *See Chaiffetz*, 798 F.2d at 735. Further, Turner has presented no evidence of centralized control of labor relations. The only evidence of common ownership or management between the Foundation and RHA is Boring's ex-officio seat on the Foundation's Board. Although Turner's job activities may have benefitted the Foundation, this fact does not overcome her inability to meet the *Trevino* criteria. Further, our prior case law suggests that a government employer, such as RHA, may not be considered part of an integrated enterprise under the *Trevino* framework. *See Trevino*, 701 F.2d at 404 n.10. Accordingly, the district court did not err in finding that the Foundation and RHA were not an integrated enterprise under Title VII.

The district court declined to consider Turner's joint-employer argument, based on *Virgo v. Rivera Beach Assocs., Ltd.*, 30 F.3d 1350 (11th Cir. 1994), on the ground that it was waived because Turner failed to raise it prior to the entry of judgment. "'Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.'" *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). Because Turner did not raise the joint-employer theory of liability until her motion for new trial, the district court did not err in deeming it waived. Further, this argument clearly lacks merit, as Turner has made no showing that the Foundation "retained for itself sufficient control of the terms and conditions of [Turner's] employment." *Virgo*, 30 F.3d at 1360.

We therefore find that Turner has not shown that she was an employee of the Foundation. Accordingly, the district court did not err in dismissing Turner's claims against the Foundation as a

matter of law.

III

Turner also appeals the district court's grant of summary judgment in favor of RHA on the racially discriminatory discharge, creation of a hostile work environment, and retaliation claims against it.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can prove Title VII discrimination through direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Where, as here, there is no evidence of direct discrimination, Title VII discrimination claims based on circumstantial evidence are analyzed under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first present a *prima facie* case of discrimination. In order to show a *prima facie* case of discriminatory discharge, a plaintiff must first establish that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class. *Rutherford*, 197 F.3d at 179, 184.

If a plaintiff is successful in establishing a *prima facie* case of discrimination*,* the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001). If the employer meets its burden, then it shifts back to the plaintiff to present substantial

evidence that the employer's reason was pretext for discrimination. *Id.* If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-48 (2000).

For summary judgment purposes, RHA concedes that Turner has established a *prima facie* case. However, RHA articulates a host of legitimate, nondiscriminatory reasons for her termination related to the quality and timeliness of her work, insubordination, chronic tardiness, and excessive personal telephone and email use during business hours. Turner primarily relies upon her own declaration, which largely consists of conclusory assertions rebutting RHA's reasons, to establish pretext. Conclusory statements are not competent evidence to defeat summary judgment. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Instead, Turner must offer specific evidence refuting the factual allegations underlying RHA's reasons for her termination. *See Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

As a threshold matter, Turner attempts to establish pretext by pointing to the fact that RHA failed to adhere to the disciplinary procedures set forth in its employee handbook. "A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact." *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1002 (N.D.Tex. 1997). Turner has introduced no evidence suggesting that RHA adhered to its disciplinary policies differently in cases involving non-minority employees. Therefore, RHA's alleged failure to follow its policy does not serve to establish pretext.

Even if we assume that, through her declaration, Turner has presented sufficient evidence to demonstrate that some of RHA's reasons were pretextual, she has clearly failed to do so for others. RHA contends that Turner failed to complete a core part of her job, the preparation of weekly donor reports, in an accurate and timely manner. Turner was responsible for creating weekly reports of donor activity using the Excel software. This report was to be completed by 1:00 P.M. every Friday so that Foundation officials could review it over the weekend. Colston testified that Turner repeatedly made formatting mistakes in the report and completed it late. In her declaration, Turner states that she produced timely and accurate Excel reports, that the errors found in the reports were due to Colston's failure to provide Turner with complete data, and that she had "mastered" the Excel program. However, in her own deposition testimony, Turner admits to making formatting mistakes on multiple occasions, completing the report after the deadline had passed, and relying upon an employee from RHA's accounting department, Theresa, to assist her in correcting the formatting errors.

The inconsistency between Turner's deposition and her declaration is clearest with respect to an incident that occurred on March 29, 2002. When Turner gave the report to Colston that morning, it was incorrect. Turner's declaration suggests that the problems were only content-related, the result of Colston's failure to provide Turner with a complete list of donor pledges. However, in her deposition, Turner does not mention any problems with the report's content. Instead, Turner admits that formatting corrections needed to be made to the report and that she relied upon Theresa to assist her in that process, clearly evincing that at least some of the errors were not the result of insufficient information provided by Colston. Both the deposition and the declaration also concede that the report was not corrected by the deadline.

-10-

To the extent that Turner's declaration conflicts with her deposition testimony, it is not sufficient to rebut RHA's proffered nondiscriminatory reason for her dismissal. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996). Turner has clearly failed to introduce evidence sufficient to rebut RHA's assertion that Turner repeatedly made formatting mistakes in the Excel reports and failed to complete them on a timely basis. Therefore, Turner has not made the required showing that her alleged firing for poor work performance is a pretext for discrimination. *See Auguster*, 249 F.3d at 402.

Turner has also failed to rebut RHA's assertion that Turner was insubordinate. Turner's deposition establishes that she sought out Theresa's help in completing the Excel reports, contrary to Colston's specific instruction that she not do so. Further, Turner makes no attempt to refute RHA's allegation that Turner ridiculed Colston to board members of the Foundation. Although Turner's declaration alleges that she "never had a problem cooperating with Colston", this conclusory statement is not sufficient to rebut the specific instances of subordination alleged in the depositions. *See Topalian*, 954 F.2d at 1131. Therefore, Turner also fails to make the required showing that this rationale for her dismissal is pretextual. *See Auguster*, 249 F.3d at 402. Because Turner has failed to introduce sufficient evidence to adequately rebut RHA's contention that she was fired for poor work performance and insubordination, summary judgment in favor of RHA was warranted on the discriminatory discharge claim. *Id.*

Turner also argues that she can prove that she suffered unlawful employment discrimination under a "mixed-motive" theory. Specifically, Turner contends that even if RHA's proffered reasons are not pretextual, racial animus was also a motivating factor for her firing. A Title VII plaintiff can establish unlawful employment discrimination under a mixed-motive theory using either direct or

circumstantial evidence. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 310 (5th Cir. 2004). The mixed-motive analysis is conducted using a "modified *McDonnell Douglas*" test, under which, after a defendant has offered nondiscriminatory reasons for the adverse employment action, a plaintiff must offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic. *Id at* 32.

Turner did not properly raise her mixed-motive argument below until her motion for new trial. The district court declined to reach this claim on the ground that it was waived due to Turner's failure to raise it prior to the entry of judgment. Because a motion for a new trial cannot be used to argue a case under a new legal theory, the district court was correct in finding that Turner's mixed-motive claim was waived. *See Simon*, 891 F.2d at 1159.

Turner next argues that the district court erred in granting summary judgment on her hostile work environment claim. To survive summary judgment on a hostile work environment claim, Turner must establish that (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment affected a term or condition of her employment; and (5) that RHA knew or should have known about the harassment and failed to take prompt remedial action. *See Long v. Eastfield Coll.*, 88 F.3d 300, 310 (5th Cir. 1996).

We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993)). Although "[d]iscriminatory verbal

intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a Title VII violation, *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995), "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges" that can survive summary judgment. *Hockman v. Westward Communications*, LLC, 407 F.3d 317, 328 (5th Cir. 2005).

Turner claims that Colston's "ghetto children" comments, university night school comment, and comments related to Turner's shopping habits, car, and son's hobby created a hostile work environment. The "ghetto children" comments, while perhaps racially inappropriate, ceased upon Turner's request. Colston's other comments were isolated incidents. Further, these comments pale in comparison, both in severity and frequency, to those found in the cases cited by Turner. *See Walker,* 214 F.3d at 619-22 (holding that plaintiff survives summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991) (finding summary judgment for defendant inappropriate where plaintiff was subjected to "nigger jokes" for a ten-year period and whose workstation was adorned with "a human-sized dummy with a black head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment where plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey"). Therefore, because Turner has not introduced evidence sufficient for a reasonable jury to find that a hostile work environment existed, district court was correct in granting summary judgment in favor of RHA on this claim. *See Anderson*, 477 U.S. at 248.

Turner next argues that the district court erred in granting summary judgment in favor of RHA on her retaliation claim. Because the *McDonnell Douglas* framework also applies to unlawful

retaliation cases, Turner must first make a *prima facie* showing of retaliation. *See Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000). To make her *prima facie* case, Turner must demonstrate that: (1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *See Fabella v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). Under Title VII, an employee has engaged in protected activity if she has "opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)]." 42 U.S.C. § 2000e-3(a). To satisfy this opposition requirement, Turner need only show that she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Byers,* 209 F.3d at 428.

Turner argues that two separate incidents constitute opposition to an unlawful employment practice: (1) Turner's request that Colston refrain from making further "ghetto children" remarks and (2) Turner's email to Boring and Wright.[4] In response to Colston's remarks about previously working with "ghetto children", Turner allegedly told Colston to "[p]lease refrain from making reference to [Turner's] race, that [Turner] did not feel inferior, and that [Turner] hoped [they] could continue to work together without race being an issue." Because Turner could not have reasonably believed that Colston's "ghetto children" statements constituted an unlawful employment practice in and of themselves, Turner's response to this incident cannot be considered protected activity. *See Byers,* 209 F.3d at 428.

Turner's email to Boring and Wright likewise does not support a *prima facie* showing of retaliation. The email was sent after a conflict between Turner and Colston regarding the formatting

---

[4]Because Turner did not file her EEOC complaint until after the alleged retaliatory employment action occurred, it cannot form the basis of a retaliation claim. *See* 42 U.S.C. § 2000e-3(a).

of one of the Excel reports. The email focuses on this incident and the deteriorating working relationship between Turner and Colston. It contains no reference to conduct that could even plausibly be considered discriminatory in nature. Because Turner could not have reasonably believed that Colston's conduct described in the email constituted an unlawful employment practice under Title VII, this incident cannot give rise to protected activity. *Id.* Accordingly,, Turner fails to make a *prima facie* showing of unlawful retaliation. *See Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir. 1998). Therefore, summary judgment in favor of RHA was appropriate on Turner's retaliation claim as well.

IV

Appellees cross-appeal the district court's denial of their motion for award of attorney's fees incurred in responding to Turner's declaration. Appellees argue that Turner's declaration constitutes a "sham affidavit", introduced in bad faith, because it contradicted her prior deposition testimony. If a court determines that an affidavit is submitted in bad faith or solely for delay, reasonable attorney's fees incurred in responding to the affidavit may be awarded. *See* FED. R. CIV. P. 56(g). We review the district court's decision whether to award attorney's fees under Rule 56(g) for an abuse of discretion. *See Kelly v. City of Leesville*, 897 F.2d 172, 176 (5th Cir. 1990).

The district court found that it was "not satisfied that Plaintiff's Declaration was submitted in bad faith or solely for the purposes of delay." The inconsistency between the declaration and the prior deposition testimony is an indirect one between the general statements in the declaration and the descriptions of the specific problems with the Excel reports in the deposition. This conflict is less direct than those which have been found to indicate bad faith. *See, e.g., Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975) (affirming Rule 56(g) award where store owner's affidavit stated that

he had no knowledge of violations of food stamp regulations, although he had admitted such knowledge in earlier administrative proceedings). Accordingly, we find that the district court did not abuse its discretion in denying Appellees' Rule 56(g) motion.

AFFIRMED.