IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-60041

KHALED RIKABI, M.D.

Plaintiff-Appellant

v.

JIM NICHOLSON, Secretary, Department of Veterans Affairs

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:05-CV-102

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The sole issue in this employment retaliation case is whether the plaintiff has set forth sufficient evidence of pretext to withstand a motion for summary judgment. Because there is sufficient evidence to create a genuine issue of material fact whether the employer's proffered explanation for the adverse employment action was a pretext for retaliation, we reverse and remand this matter to the district court for proceedings consistent with this opinion.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I. BACKGROUND

Khaled Rikabi, M.D., is a Muslim of Lebanese origin, a naturalized citizen of the United States, and an experienced physician specializing in infectious diseases. On August 18, 1996, he began working as a staff physician for the Department of Veterans Affairs at the Biloxi VA Medical Center (the "Center"). In June 1997, his role was expanded to provide medical care to injured employees at the Center's Occupational Health Service. In January 2000, his role was again expanded to include case management, essentially granting him the full complement of duties and responsibilities of the Occupational Health Director. Dr. Gregg Parker, Chief of Staff of the Center, supervised Dr. Rikabi's work as a physician. Gary Butterfield, Human Relations Manager, supervised his work as Occupational Health Director.

Following the September 11, 2001 attacks, Dr. Rikabi began noticing signs of anti-Muslim sentiment at the Center. Specifically, he alleges that Dr. Parker openly referred to Muslims as a threat to the United States. He also alleges that Butterfield's wife, who worked as a secretary at the Center, informed him that she and her husband dislike Muslims and how Muslims live.

On January 3, 2003, Dr. Parker and Butterfield informed Dr. Rikabi that they were reorganizing the Occupational Health Service and that they might "phase out" his position. On January 18, 2003, Dr. Rikabi made a presentation demonstrating the significant savings that would be lost without an occupational health physician on site. Nonetheless, on March 17, 2003, Butterfield terminated Dr. Rikabi, effective March 27, 2003, explaining that his services were no longer needed. Although Dr. Rikabi pursued a private practice, he continued to provide infectious disease consultations at the Center on an intermittent basis at the request of Dr. Kenneth C. Roberts, Chief of Medicine at the Center. Dr. Rikabi continues to retain his privileges at the Center.

In June 2003, Dr. Rikabi learned that the Center had issued a recruiting announcement for an occupational health physician - the very position from which he was terminated. On June 17, 2003, he made a verbal EEO complaint with the Center's EEO Manager, Pat Griffin, alleging that Dr. Parker discriminated against him on the bases of religion and national origin. Almost immediately, the number of calls requesting his consultation services at the Center dropped significantly. In fact, almost three hours after making his EEO complaint, Dr. Parker announced that any patient needing an infectious disease consult should not be seen by Dr. Rikabi, but should instead be transported to Pascagoula, Mississippi. During the next few months, the Center began reviewing any physician who called Dr. Rikabi for an infectious disease consultation, intermittently terminated his computer access, and during one consult, Butterfield said to him, "You're not supposed to be here. Why are you here?"

On February 24, 2005, Dr. Rikabi filed suit in federal court alleging wrongful termination, hostile work environment, and retaliation claims. The district court granted summary judgment in favor of the defendant on the wrongful termination and hostile work environment claims on the ground that they were untimely. It also granted summary judgment in favor of the defendant on the retaliation claim on the ground that Dr. Rikabi failed to establish pretext. Dr. Rikabi filed this timely notice of appeal.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007). A party is entitled to summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 325 (5th Cir. 2004). In reviewing the evidence, the court must therefore "refrain from making credibility determinations or weighing the evidence." Turner, 476 F.3d at 343.

## III. ANALYSIS

To establish a claim for retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. See Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003). Once the plaintiff establishes a prima facie case for retaliation, the burden of production shifts to the defendant to provide a legitimate non-retaliatory purpose for the adverse employment action. Pineda v. UPS, 360 F.3d 483, 487 (5th Cir. 2004). Assuming the defendant meets this burden, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose." Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005). "To satisfy this burden, the plaintiff must offer 'some evidence . . . that permits the jury to infer that the proffered explanation was a pretext for [retaliation]. The trier of fact may not simply choose to disbelieve the employer's explanation in the absence of any evidence showing why it should do so.'" Pineda, 360 F.3d at 487 (quoting Swanson v. GSA, 110 F.3d 1180, 1185 (5th Cir. 1997). "[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999).

Here, it is undisputed that Dr. Rikabi set forth a prima facie case of retaliation: (1) he engaged in protected activity; (2) he experienced a significant

and sudden drop in his workload at the Center; and (3) this action occurred almost immediately following his protected activity. Thus, the burden of production shifts to the defendant to provide a non-retaliatory explanation for the adverse employment action and if the defendant meets this burden, the ultimate burden of persuasion shifts to the plaintiff to provide some evidence of pretext. Pineda, 360 F.3d at 487.

At the June 17, 2003 meeting -- a mere three hours after Dr. Rikabi made his verbal EEO complaint at the Center -- Dr. Parker instructed his staff to stop using Dr. Rikabi's services, explaining that Dr. Rikabi had an onsite altercation and had to be escorted off campus by security.[1] In response to Dr. Parker's instruction, Dr. Roberts investigated the alleged incident and confirmed that in March 2003, Dr. Rikabi and his wife had an altercation at the Center and had to be escorted off campus by security. We initially agree that a reasonable jury could find the timing of this explanation suspicious given that Dr. Parker used an incident that occurred three months prior as a justification for his instruction to stop using Dr. Rikabi's services. Moreover, at his deposition, Dr. Parker gave a different justification, explaining that he was actually concerned that Dr. Rikabi was providing substandard patient care.[2] Not only could a reasonable jury find this subsequent explanation suspicious given that it was not the explanation provided at the June 17, 2003 meeting, but just ten months prior, Dr. Parker gave Dr. Rikabi an overall performance rating of "outstanding."[3] In fact, there is nothing in the record, other than Dr. Parker's blanket assertion,

---

[1] Dr. Parker denies having had knowledge of the EEO complaint at this time.

[2] Notwithstanding his "concerns," Dr. Parker still informed his staff that if Dr. Ekenna or the infectious disease specialist at the Keesler Air Force Base was unavailable, "Dr. Rikabi was fine."

[3] Specifically, Dr. Parker gave Dr. Rikabi a rating of "outstanding" for "clinical competence," "education competence," and "research and development," and a rating of "highly satisfactory" for "administrative competence" and "personal qualities."

indicating that Dr. Rikabi provided substandard patient care. Incidentally, Dr. Parker is no longer the Center's chief of staff and the new chief of medicine has since inquired about using Dr. Rikabi's services again because the current consultation service is highly substandard. That the Center is now contemplating the use of Dr. Rikabi's services again lends doubt to Dr. Parker's explanation that Dr. Rikabi provided substandard care. A reasonable jury could further question the sincerity of Dr. Parker's varying explanations given that other physicians at the Center were troubled by his instruction to send patients to Pascagoula, Mississippi when Dr. Rikabi was offering onsite consultations. In fact, when asked about the true motive behind Dr. Parker's instruction, Dr. Lactancio Fernandes testified at his deposition that "the rumor around the hospital was that it was because [Dr. Rikabi] had filed an EEO complaint."

Given (1) the timing of Dr. Parker's instruction; (2) the rumor that he was angry about the EEO complaint; (3) the varying explanations for his instruction; (4) the fact that his instruction raised concerns about patient care; (5) Dr. Rikabi's outstanding performance evaluations; and (6) the fact that the Center is once again seeking Dr. Rikabi's services, we conclude that evidence of pretext sufficient to create a genuine issue of material fact exists. See Shackelford, 190 F.3d at 409 ("[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.").

## IV. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand this matter for proceedings consistent with his opinion.

REVERSED AND REMANDED.