# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2008

Charles R. Fulbruge III
Clerk

No. 08-10383
Summary Calendar

MERCY A. JUSUF

Plaintiff-Appellant

v.

SOUTHWEST AIRLINES CO.

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-cv-1958

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Mercy A. Jusuf ("Jusuf"), an American citizen originally from Indonesia, filed suit against Southwest Airlines Company ("Southwest") alleging employment discrimination based on national origin and retaliation in violation of Title VII, 42 U.S.C. § 2000e. The district court granted Southwest's motion for summary judgment, and Jusuf filed this appeal. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 14, 1997, Southwest hired Jusuf as a customer service agent at Love Field Airport in Dallas, Texas. Upon hire, Jusuf signed a document acknowledging the duties and responsibility of Southwest personnel. The document included a responsibility to support Southwest and its policies to Southwest's customers. One of Southwest's policies is to require customers who wish to travel stand-by on restricted fare tickets to pay an upgrade fee. Jusuf also signed, on at least eight occasions, Southwest's Basic Rules of Conduct. Southwest's Basic Rules of Conduct include a prohibition against accepting gratuities, specifically stating that "it is improper for any employee to ask for or accept money, or any other gratuity from any person or Customer for services rendered. . . . Violation of this rule will subject an employee to discipline, up to and including dismissal." At a deposition, Jusuf admitted to knowing that it was against Southwest's policy to accept gratuities from customers and to waive an upgrade fee.

During Jusuf's tenure at Southwest, she progressed through the ranks until she was promoted to the position of Customer Service Supervisor. In November 2004, another Southwest Customer Service Supervisor, Amanda Pfeifer, approached a Dallas Customer Service Manager, Lulu Pena-Martinez, and reported that (1) Dr. Robert Andrews, a frequent Southwest customer, requested a free upgrade and became upset when Pfeifer would not waive the upgrade fee, (2) Dr. Andrews requested to speak with Jusuf when Pfeifer refused to waive the fee, and (3) Jusuf accepted a Christmas card that contained $100 from Dr. Andrews.

Pena-Martinez researched Dr. Andrews flight history on Southwest's internal computer information system. Pena-Martinez determined that on at least twelve occasions, Dr. Andrews booked a ticket on the latest, cheapest flight from Dallas to Houston and was given a free upgrade to an earlier, more expensive flight by Jusuf. After checking the flight history for the suspect flights,

Pena-Martinez reported Jusuf's apparent preferential treatment of Dr. Andrews to Bruce Ryan, the Station Manager, and Gwen Thalley, a fellow Customer Service Manager. The upgrades cost Southwest revenue of approximately $645.00.

On January 26, 2005, Pena-Martinez and Thalley met with Jusuf and questioned her about accepting gratuities and informed her that they had discovered twelve improper upgrades. In March 2005, Jusuf met with Ryan to discuss these issues. In April 2005, Jusuf met with Ryan and a member of Southwest's Corporate Security Department, Frank Garcia. On April 26, 2005, Jusuf handwrote a letter accepting responsibility for her actions and asserting that her intention was not to steal from the company.

Art Allison, the Regional Director of Ground Operations in Dallas, then independently reviewed the computer research compiled by Pena-Martinez and determined that Jusuf waived the upgrade fees without good reason. Allison was also informed that Jusuf admitted, verbally and in writing, to waiving upgrade fees improperly and accepting gratuities. Allison suspended Jusuf without pay.

Allison directed Pena-Martinez to conduct an investigation into the conduct of all Dallas-Love Field supervisors using the same research system that confirmed the improper upgrades by Jusuf. Pena-Martinez determined that another supervisor, Chris Kuntz (a white, American male), also waived upgrade fees for Dr. Andrews without justification. The research did not reveal any other Dallas supervisors who had waived upgrade fees without justification.

On May 20, 2005, Southwest, acting on a final decision made by Allison, terminated Jusuf and Kuntz for (1) waiving upgrade fees and (2) accepting gratuities in violation of Southwest's Basic Rules of Conduct and company policies.

On June 13, 2005, Jusuf attended an exit interview with Willie Edwards and Greg Wells, then Senior Director and Vice President, respectively, of the Ground Operations Department at Southwest. During the exit interview, Jusuf

told Edwards and Wells that she felt as if she was discriminated against because she was a woman, although Jusuf does not remember if she also told them she felt discriminated against because of her national origin. After the meeting, Edwards and Wells conducted a review of Jusuf's situation. Southwest confirmed its determination that Jusuf violated policies and upheld the termination.

Jusuf filed a charge of employment discrimination against Southwest with the Equal Employment Opportunity Commission. On July 25, 2006, Jusuf received a "Notice of Right to Sue" letter, entitling her to institute a civil action within ninety days of the date of the receipt of the notice. On October 23, 2006, Jusuf filed the instant case in the Northern District of Texas alleging national origin discrimination and retaliation in violation of Title VII. On December 11, 2007, Southwest filed a motion for summary judgment. On March 26, 2008, the district court granted summary judgment in favor of Southwest on all of Jusuf's claims. Jusuf appealed.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the district court's grant of summary judgment de novo, applying the same legal standard as the district court in the first instance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In making a determination as to whether there is a genuine issue of material fact, this Court considers all of the evidence in the record but refrains from making credibility determinations or weighing the evidence. Turner, 476 F.3d at 343 (citation omitted). We draw all reasonable inferences in favor of the nonmoving party, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Id. (citations omitted). "Summary judgment is appropriate

if a reasonable jury could not return a verdict for the nonmoving party." Id. (citation omitted).

## B. Jusuf's National Origin Discrimination Claim

Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Jusuf has not provided direct evidence of discrimination, therefore, her Title VII claim based on circumstantial evidence is analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Turner, 476 F.3d at 345.

Jusuf must first establish a prima facie case of discrimination by establishing that she (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) that others similarly situated were treated more favorably. See Septimus v. Univ. of Houston, 399 F.3d 601, 609 (5th Cir. 2005).

Jusuf fails to establish a prima facie case of discrimination. Jusuf is a member of a protected class–she is Asian-American and originally from Indonesia. Jusuf was subjected to an adverse employment action–she was terminated. The parties do not dispute whether Jusuf was qualified for her position. Jusuf, however, fails to demonstrate that others similarly situated were treated more favorably.

Jusuf alleges that she was terminated while other white employees were treated more favorably. To prove her prima facie case, Jusuf must demonstrate that Southwest gave preferential treatment to a white employee under "'nearly identical circumstances'; [sic] that is, 'that the misconduct for which [Jusuf] was discharged was nearly identical to that engaged in by . . . [other white] employees.'" Okoye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 514 (5th Cir. 2001). For conduct to be nearly identical, the individual given

preferential treatment needs to have engaged in similar conduct to Jusuf (i.e., accepted gratuities and improperly waived upgrade fees), and must have the same supervisors as Jusuf. See Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 305 (5th Cir. 2000). Southwest must also be aware of the alleged misconduct of the other employee. See Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001).

Jusuf alleged that (1) Steve Holland, another Customer Service Supervisor at the same station, frequently waived upgrade fees for a customer, (2) other Southwest employees at the Dallas station received gratuities from Dr. Andrews, (3) a Southwest agent at a different location received passes for a Lou Diamond Phillips stage performance, (4) Julie Boston, a Houston employee, also accepted gratuities from and waived upgrade fees for Dr. Andrews, (5) Southwest employees at a different location received gift baskets from two customers, (6) two Southwest employees at the Dallas location were involved in an extramarital affair, and (7) another employee told Jusuf that a Southwest employee, S.B. Stone, violated Southwest's sexual harassment policies.

Claims (2)-(7) of Jusuf's allegations fail because the individuals are not similarly situated to Jusuf. The employees in claims (2), (3), (5), (6), and (7) did not accept gratuities and waive upgrade fees. Claim (4) fails because Boston had different supervisors than Jusuf. See Wyvill, 212 F.3d at 305.

Claim (1) alleges that Holland, a white Southwest employee, who reported to the same supervisors as Jusuf, accepted gratuities from customers and waived upgrade fees. Specifically, Jusuf alleges that Holland received Nascar tickets as a gratuity from a customer, and that Holland repeatedly waived upgrade fees for the customer. At Jusuf's deposition, however, she testified that she only witnessed Holland waive an upgrade fair for the customer on one occasion. In addition, Jusuf testified that she did not report the infraction to her supervisors and that she had no reason to believe that Ryan or Allison were aware of Holland's actions. Finally, Jusuf fails to provide any evidentiary support for her

claim that Holland repeatedly waived upgrade fees for a customer whom he received gratuities from, or that if this did occur, that Southwest was aware of Holland's infraction.[1]  Thus, Holland is not similarly situated.

Jusuf fails to demonstrate a prima facie case of national original discrimination, and we AFFIRM the district court's grant of Southwest's motion for summary judgment based on Jusuf's national origin discrimination claim.

## C. Jusuf's Retaliation Claim

The McDonnell Douglas burden-shifting framework also applies to Jusuf's unlawful retaliation claim.  Turner, 476 F.3d at 348 (citation omitted).  Jusuf must demonstrate a prima facie case of retaliation by showing that: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." Id. (citation omitted).  Under Title VII, an employee engages in protected activity if she opposes "any practice made an unlawful employment practice under" 42 U.S.C. § 2000e-3(a).

Jusuf confirmed an alleged affair between a supervisor and subordinate that violated Southwest policy.  Jusuf stated that she and Kuntz were treated unfairly because of their involvement in reporting the affair.  This Court, however, has expressly held that discrimination based on an employee's knowledge of an affair between two co-workers fails to form the basis of a Title VII claim.  See Ellert v. Univ. of Tex., 52 F.3d 543, 546 (5th Cir. 1995).  Jusuf, therefore, did not engage in protected activity and her retaliation claim fails.

## IV. CONCLUSION

For the foregoing reasons, the district court's grant of Southwest's motion for summary judgment is AFFIRMED.

---

[1] Southwest conducted an independent review of Southwest's records and determined that only one other Customer Service Supervisor, Kuntz, consistently waived upgrade fees.  Kuntz, a white male employee, was terminated on the same day as Jusuf.