IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 15, 2009

Charles R. Fulbruge III
Clerk

No. 08-20232

SONJA BARNETT

Plaintiff - Appellant

v.

THE BOEING COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-3771

Before HIGGINBOTHAM, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Sonja Barnett ("Barnett") brought this action against Defendant-Appellee Boeing Company ("Boeing"). Barnett argues that while employed at Boeing she was subjected to sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Barnett claims that a fellow employee, Steven Baysinger ("Baysinger"), sexually harassed her, that she reported the harassment to Boeing, and Boeing delayed taking action to prevent future harassment, therefore subjecting her to a hostile

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

work environment. Barnett also claims that Boeing denied her a promotion and assigned her to an undesirable project in retaliation for her reports of discrimination. The district court granted Boeing's motion for summary judgment. Barnett appeals. For reasons discussed below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2001, Boeing hired Barnett as a Level 3 Procurement Agent in the Supplier Management & Procurement Department ("SM&P"). In August 2004, Barnett's supervisor, Tom Henson ("Henson"), began engaging in activity which made Barnett uncomfortable. Barnett and Henson were assigned to work on a procurement team together and shared an office during the assignment. Henson called Barnett at home on at least three occasions, drove by Barnett's house on one occasion, and expressed a romantic interest in Barnett to other co-workers. In September 2004, Barnett began feeling harassed by Baysinger, a Quality Manager within SM&P. Baysinger subjected Barnett to inappropriate behavior, namely leering, sexually suggestive comments and unwanted touching.

On November 9, 2004, Barnett reported Henson and Baysinger's actions to one of Boeing's investigators in the EEO Department, Marvin Thomas ("Thomas"). Barnett submitted a written statement that focused almost entirely on Henson's conduct, stating that she was providing the summary regarding her "situation with Mr. Henson." At the end of the summary, Barnett stated that another unprofessional work experience had arisen with a different manager within SM&P. Specifically, she stated that this

> particular individual has made me very uncomfortable and I find myself always trying to avoid him whenever possible. He constantly uses "elevator eyes" when talking with me and even went so far as to pat me on my upper thigh area when I was walking down the stairs and he was on his way up. This Manager's name is Steve Baysinger.

After a recommendation from Thomas, Barnett began attending counseling through Boeing's Employee Assistance Program to discuss the impact of the events on Barnett's well-being.

After an investigation, Barnett's allegations regarding Henson were substantiated and Boeing placed Henson on probation for twelve months. Boeing did not begin an investigation of Baysinger at this time. Barnett claims that she was subjected to "frequent unwelcomed sexual advances and inappropriate touching from Baysinger" from November 2004 through May 2005. She states that she notified Thomas of the inappropriate conduct on at least three to four occasions, but Boeing claims that Barnett did not complain of Baysinger's conduct until May 2005.

In May 2005, Barnett complained of Baysinger's conduct to Phyllis Adams ("Adams"), a Procurement Manager, who communicated Barnett's concerns to Boeing's Ethics Advisor, Jeff Brockman ("Brockman"). Brockman contacted Boeing's Central Region EEO Office, and an investigation was initiated by EEO Investigator Susan Amos ("Amos"). On May 18, 2005, Amos met with Barnett to gather information about Baysinger's conduct, and Amos conducted an investigation into Baysinger's conduct from May 19, 2005 through June 3, 2005.

On May 19, 2005, Barnett filed her initial charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), stating that Boeing subjected her to a hostile work environment from November 2004 through May 2005 as a result of Baysinger's conduct. On May 20, 2005, Barnett provided Amos with a written statement complaining of Baysinger's continued inappropriate touching and continued sexual behavior towards Barnett.

On June 3, 2005, Boeing determined that Baysinger's conduct violated Boeing's policy against inappropriate workplace behavior and suspended Baysinger for one week without pay beginning on June 6, 2005. Baysinger was also required to complete gender sensitivity training and received a written

warning reminding him that failure to correct his behavior would result in further corrective action up to and including termination. After Baysinger was informed of his suspension, he remained on Boeing's premises, standing in the atrium outside the building where Barnett's office was located. After Barnett complained, Baysinger was escorted to his car by his direct supervisor, Richard Hill ("Hill").

On June 13, 2005, Baysinger returned from suspension and his office area was moved to a different floor in the same building. Barnett states, however, that Baysinger continued his harassing behavior and attempted to interact with Barnett. Barnett alleges that she continued reporting the conduct to Adams and Amos; Boeing disputes these assertions.

On June 25, 2005, Henson recommended Barnett for a job reclassification which would have been a promotion to a Level 4 Procurement Agent. The promotion would include a raise of approximately $4,000 to $6,000 per year. The proposed reclassification was submitted to Hill, Baysinger's supervisor, for approval.

In July 2005, Barnett was reassigned to a project, with a small company named Mainthia Technologies, Inc. ("MTI"). Baysinger was also assigned to the MTI project. Barnett states that she had to work continuously with Baysinger throughout the course of the project, and that Baysinger attempted to intimidate and/or leer at Barnett during meetings.

On December 15, 2005, Boeing denied Barnett's reclassification to a Level 4 Procurement Agent without explanation. Boeing states that Hill denied the reclassification because: (1) there was no open requisition for a Level 4 Procurement Agent; (2) Barnett did not have a four-year degree or the requisite number of years of experience; and (3) there was no process in place for considering all potentially eligible candidates for such a position. Barnett, however, argues that when she was recommended for reclassification, she was

already doing the work typical of a Level 4 Procurement Agent and deserved the reclassification–essentially a promotion.

Barnett believed that the denial of her job reclassification was motivated by her complaints against Baysinger, and she amended her charge of discrimination with the EEOC to add a retaliation claim. On July 28, 2006, the EEOC found sufficient evidence to establish that Barnett was sexually harassed by a member of management, stating that the evidence suggested that sexual harassment continued even after Barnett complained to management officials. However, the EEOC was unable to substantiate Barnett's retaliation claim.

On November 29, 2006, Barnett initiated this action against Boeing. She alleged that while employed at Boeing she was subjected to sexual harassment and retaliation in violation of Title VII, the Texas Commission on Human Rights Act ("TCHRA"), and the common law of the State of Texas.

On November 12, 2007, Boeing moved for summary judgment, which the district court granted. The district court held that Baysinger's conduct did not generate an environment that was so severe or pervasive that it created a hostile and abusive work environment and, therefore, did not alter the terms or conditions of Barnett's employment. The district court found that Barnett failed to establish a prima facie case of sexual harassment, and that Boeing was entitled to summary judgment as a matter of law on Boeing's sexual harassment claim. The district court also held that Barnett failed to establish a prima facie case of retaliation, finding that Barnett failed to establish any causal connection between adverse employment actions and Barnett's decision to file a charge of discrimination. Finally, the district court held that its assessment of Barnett's sexual harassment and retaliation claims under Title VII applied to Barnett's claims under the THCRA and Texas common law. Barnett appeals.

## II.  STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, applying the same legal standard as the district court in the first instance. Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted).    Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  In making a determination as to whether there is a genuine issue of material fact, this Court considers all of the evidence in the record but refrains from making credibility determinations or weighing the evidence.  Turner, 476 F.3d at 343 (citation omitted).  We draw all reasonable inferences in favor of the nonmoving party, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" Id. (citations omitted).  "Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." Id. (quotation omitted).

## III.  DISCUSSION

The district court correctly determined that Barnett failed to make out the prima facie case necessary for establishing a hostile work environment and a retaliation claim.  Therefore, we AFFIRM the district court's grant of Boeing's motion for summary judgment.

A. Hostile Work Environment Claim

Barnett must establish the following factors to bring a hostile work environment claim: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take

remedial action. The harassing conduct, however, must be severe or pervasive. Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005). Id.

Barnett must demonstrate that the harassment created an environment that a reasonable person would find hostile or abusive. Id. The Supreme Court has held that "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." Harris, 510 U.S. at 21 (internal citations omitted). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile [or] abusive, and subjectively offensive, meaning that the victim perceived it to be so." Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 874 (5th Cir. 1999). This Court must look at the totality of the circumstances when determining whether an environment is hostile or abusive. Shepherd, 168 F.3d at 874. The Court may consider factors such as "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Septimus, 399 F.3d at 611.

It is uncontested that Barnett satisfies elements (1)-(3) for establishing a hostile work environment claim. Barnett is a member of a protected class: she is a woman. Barnett was subjected to unwelcome sexual harassment: as evidenced by Boeing's eventual findings of improper sexual harassment on the part of Baysinger and the EEOC findings. The harassment suffered by Barnett was based on sex: again, as evidenced by Boeing's eventual findings of improper sexual harassment on the part of Baysinger. The district court found that Barnett failed to satisfy elements (4) and (5).

There is sufficient evidence for purposes of summary judgment to show that Baysinger leered at Barnett, touched her in sexually inappropriate and

unwelcome ways, and allegedly actively intimidated her after she complained of his actions. Looking at the totality of the circumstances, this Court's decisions in Shepherd and Hockman v. Westward Communications LLC, 407 F.3d 317 (5th Cir. 2004), make clear that Barnett failed to demonstrate that her working environment was objectively hostile or abusive within the meaning of Title VII.

In Shepherd, the plaintiff was subjected to sexually suggestive comments and was touched on her arms. Shepherd, 168 F.3d at 872. This Court found those actions not to be physically threatening and held that the conduct would not interfere unreasonably with the plaintiff's work performance. Id. at 874. In Hockman, over a period of eight months the plaintiff was subjected to sexually suggestive comments, touching and brushing up against the plaintiff's breasts and behind, an attempted kiss, and requests to be alone with the plaintiff. Hockman, 407 F.3d at 321-22. This Court explained that to "survive summary judgment, the harassment must be 'so severe [or] pervasive that it destroys a protected classmember's opportunity to succeed in the work place.'" Id. at 326 (citation omitted). The incidents of sexual harassment occurring before Barnett's complaint and Baysinger's suspension do not rise to the level required by Shepherd and Hockman.

Barnett correctly argues, however, that the incidents of sexual harassment must be considered in conjunction with the psychological harm and incidents of intimidation that occurred after Baysinger ceased to physically touch her. See e.g., Harris, Inc., 510 U.S. at 22 (stating that "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being"). Shortly after reporting Baysinger's conduct to management, Barnett was assigned to work on the MTI project with Baysinger, where she claims Baysinger continued harassing her. The harassment was not physical in nature, but was psychological and Barnett contends that Baysinger continued the harassment because of her sex, although not sexual in nature, and that the psychological

harm and intimidation falls under Title VII's protections. Barnett is correct in stating that Title VII bars discrimination on the basis of gender or sex, and that the harassment does not need to be sexual in nature. See Urbano v. Cont'l Airlines, 138 F.3d 204, 205-06 (5th Cir. 1998).

Drawing all reasonable inferences in favor of Barnett, we hold that the combination of the incidents that occurred before and after she reported Baysinger's conduct do not rise to the level of severe or pervasive conduct. Barnett alleges that Baysinger (1) remained near her building after his suspension and thereby "stalked" her; (2) made excuses to come near her work space and glare at her; and (3) intimidated her. While this Court does not doubt that this was an uncomfortable workplace environment, Barnett fails to establish that the actions destroyed her ability to succeed in the workplace environment. Baysinger's actions do not rise to the level of severe or pervasive conduct required to satisfy element (4).

Finally, the district court erred in finding that Baysinger did not satisfy element (5) because Boeing took prompt remedial action after Barnett's May 2005 complaint. While it is correct that Boeing took prompt remedial action after the May 2005 complaint, our review of the record demonstrates that Boeing was on notice of Baysinger's inappropriate conduct as early as November 2004. As was recounted above, Barnett's November 2004 complaint of harassment stated that Baysinger touched her thigh on one occasion and often looked at her with "elevator eyes." Boeing was on notice of possible inappropriate conduct by Baysinger and took no action for six months. Thus, Barnett satisfies element (5).

Notwithstanding our contrary determination on element (5), the totality of the circumstances demonstrate that Barnett failed to show that Baysinger's harassment was sufficiently severe or pervasive so as to alter the conditions of her employment; therefore, she fails to establish element (4) of the prima facie

case. We AFFIRM the district court's grant of summary judgment in favor of Boeing with respect to Barnett's hostile work environment claim.

## B. Retaliation Claim

For Barnett to establish a retaliation claim, she must show (1) that she engaged in protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. See Baker v. Am. Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2000). An adverse employment action is any action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). Barnett must demonstrate that the adverse employment action would not have occurred "but for" Barnett's protected activity. Septimus, 399 F.3d at 608.

It is undisputed that Barnett was engaged in protected activity when she filed her charge of discrimination with the EEOC. Barnett alleges that Boeing took a materially adverse employment action when it (1) chose not to promote Barnett and (2) pressured Barnett to accept reassignment to the MTI project. Barnett was recommended for a promotion three weeks after filing her charge of discrimination with the EEOC. The decision of the recommended promotion was delayed for several months. A reasonable employee may have felt dissuaded from supporting his/her discrimination charge in this situation. Barnett fails to establish, however, how assignment to the MTI project is a materially adverse employment action. Barnett does not present evidence that the project assignment involved any sort of demotion of responsibility, pay, or was associated with any stigma. Workers are often assigned to work on various projects within the scope of their employment. The assignment required Barnett to work with Baysinger, but that alone does not permit a determination that the assignment is an adverse employment action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Thus,

Barnett satisfies elements (1) and (2) for establishing a prima facie case of retaliation with respect to the denied reclassification, but not with respect to her claims regarding the reassignment to the MTI project.

To satisfy the final element of a prima facie case of retaliation, Barnett must demonstrate a causal connection between the protected activity (filing the EEOC charge) and the adverse action. Barnett correctly argues that the close timing between filing her EEOC charge and the denial of her promotion may provide the causal connection required to make out a prima facie case of retaliation. See McCoy, 492 F.3d at 562. Once Boeing, however, provides a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, Barnett must offer some evidence from which a jury may infer retaliation was Boeing's actual motive. Id.

Boeing provided a legitimate, nondiscriminatory reason for denying Barnett's promotion. Specifically, Boeing stated that (1) there was no open requisition for a Level 4 Procurement Agent, (2) Barnett did not have a four-year degree or the requisite number of years of experience, and (3) there was no process in place for considering all potentially eligible candidates for such a position. Barnett argues that Boeing failed to provide a reason to explain the timing of the adverse employment actions against Barnett. Boeing argues that the promotion had to be denied after Barnett filed the EEOC charge because the recommendation for promotion occurred after Barnett filed the charge of discrimination. Boeing satisfies its burden of production for establishing a legitimate, nondiscriminatory reason for explaining the timing associated with the denial of Barnett's promotion.

Because Boeing presents a legitimate, nondiscriminatory reason explaining the timing of its decision, Barnett must offer evidence to satisfy the causation element for establishing a prima facie case of retaliation. This evidence must allow a jury to infer that retaliation was Boeing's actual motive.

See McCoy, 492 F.3d at 562. Barnett fails to provide evidence rebutting Boeing's stated reasons surrounding the timing of Barnett's denied promotion that demonstrates retaliation was Boeing's actual motive. Furthermore, Barnett provides no evidence that the adverse employment action would not have occurred "but for" her protected activity. Barnett, therefore, fails to establish the third element necessary for establishing a prima facie case of retaliation. Thus, we AFFIRM the district court's grant of summary judgment with respect to Barnett's retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.