**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 20, 2009

No. 08-31008

Charles R. Fulbruge III
Clerk

JAMES E. STONE, SR

Plaintiff - Appellant

v.

PARISH OF EAST BATON ROUGE, Through Recreation and Park
Commission for the Parish of East Baton Rouge

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:06-CV-401

Before JONES, Chief Judge, and HIGGINBOTHAM and HAYNES, Circuit
Judges.

PER CURIAM:*

James Stone appeals the district court's summary judgment in favor of his
employer, Parish of East Baton Rouge, through Recreation and Park
Commission for Parish of East Baton Rouge (BREC), on his discrimination,
harassment, and retaliation claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

## I. Facts

BREC hired Stone as an assistant supervisor in November 2001. In July 2004, Stone was promoted to a manager position at Webb Park. At this point, Stone began receiving negative feedback. For example, two long-time, African-American employees whom he supervised requested transfers, Stone was disciplined for unauthorized delegation of duties on multiple occasions, and one employee reported Stone for stealing soft drinks from the store. In April 2005, Stone was placed on probation after delegating computer and cash register responsibilities to a part-time clerk despite the previous warnings. Right after this, another of Stone's subordinates complained about "various incidences of mismanagement." Based on these complaints, Stone was transferred to another facility to observe BREC's best management practices. Stone was twice reprimanded at the new facility—once for bringing his wife to work during one of his shifts and again for failing to lock up after he left for the day.

In May 2005, Stone sent correspondence to BREC board members and executives asserting that he was being discriminated against because of his race. In response, BREC's Human Resources manager and Superintendent met with Stone. Although those present testified that Stone admitted he did not believe he was being discriminated against because of his race, BREC nevertheless conducted an investigation into the allegations. Three employees were interviewed, all of whom were African-American and all of whom denied any discrimination.

Seven weeks after his first transfer, Stone was again transferred after complaining about a "highly explosive" incident between himself and a clerk. At his new location, Stone was reprimanded for leaving a clerk unsupervised and telling the clerk that he was working from home on five different occasions. The next week, a female clerk complained that Stone was harassing her. Stone was terminated on June 30, 2005.

In July 2005, Stone appealed his termination. The committee reviewing his termination concluded that it should be upheld. A formal appeal hearing was subsequently held by a three-person panel. Stone was allowed to present evidence during the two-and-a-half-hour hearing. Three days later, the panel found no clear or compelling evidence that Stone had been wrongfully terminated or suffered discrimination. Stone filed a complaint with the Equal Employment Opportunity Commission (EEOC). The Louisiana Commission on Human Rights concluded that no statutes had been violated, and the EEOC adopted these findings.

In June 2006, Stone filed suit in federal district court asserting various federal claims including a claim under 42 U.S.C. § 1981 and claims of race discrimination, race-based harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964. Stone also asserted a Louisiana state law claim for intentional infliction of emotional distress. Two years later, the district court granted summary judgment on all federal claims and dismissed the state law claim without prejudice. Stone then filed this appeal.

## II. Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Grenier v. Med. Eng'g Corp.*, 243 F.3d 200, 203 (5th Cir. 2001). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). On a motion for summary judgment, a court must view the facts in the light most favorable to the non-movant. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). No genuine issue of material facts exists if the summary judgment evidence is such that no reasonable juror could find in favor of the non-movant. *See Hockman v. Westward Commc'ns*, 407 F.3d 317, 325 (5th Cir. 2004).

## III. Discussion

### A. Racial Discrimination

Stone contends that he presented direct and circumstantial evidence of racial discrimination sufficient to meet his burden as a non-movant responding to a summary judgment motion.

#### 1. Direct Evidence

Stone claims that his supervisor called him "bubba" and used the terms "you people" or "your people." Stone asserts that these are racially charged terms providing direct evidence of discriminatory intent.

BREC argues that Stone has not shown that these comments were racially motivated and asks this court to classify these remarks as "stray remarks." BREC cites several cases where the plaintiff presented evidence of more racially charged remarks than those alleged by Stone and where the court found such comments insufficient as direct evidence under the "stray remarks" doctrine. *See Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342-44 (5th Cir. 2002); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 470 (5th Cir. 2002); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222-23 (5th Cir. 2001).

A Title VII racial discrimination claim can be established through either direct or circumstantial evidence. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Where a plaintiff produces direct evidence of discrimination, he is "entitled to bypass the *McDonnell Douglas* burden-shifting framework commonly applied in discrimination cases and proceed directly to the question of liability." *Moore v. U.S. Dep't of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995). "In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).

This court has held that "for comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Patel*, 298 F.3d at 343-44 (quoting *Wallace*, 271 F.3d at 222-25).

Stone made little effort to meet the four-prong test. He argues that the four-prong test is only used where "comments are the sole evidence offered to support a finding of discrimination." Although Stone is correct that the Supreme Court declined to use the four-prong test in favor of the *McDonnell Douglas* framework where the evidence was circumstantial, *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S. Ct. 2097 (2000), this court continues to apply the four-prong test "when [as here] a remark is presented as direct evidence of discrimination apart from the *McDonnell Douglas* framework." *Laxton*, 333 F.3d at 583 n.4.

We do not condone insensitive and boorish remarks such as those alleged by Stone here. However, the evidence presented does not show either sufficient temporal proximity or any relationship between the remarks and the challenged conduct. Accordingly, these remarks do not mandate reversal of the district court's judgment.[1]

## 2. Circumstantial Evidence

Circumstantial evidence is examined under the well-known *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411

---

[1] Stone also argues that he is proceeding under a "mixed-motive" analysis. Stone may only proceed under a mixed-motive analysis where direct evidence is presented and the employer asserts that the same adverse employment decision would have been made regardless of the discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Because Stone did not bring any direct evidence, his mixed-motive theory is unavailing.

U.S. 792 (1973). To show a prima facie case of discriminatory discharge, a plaintiff must first establish that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) was replaced by someone outside of the protected class or that similarly situated employees of a different race were treated more favorably. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). If a plaintiff successfully establishes a prima facie case of discrimination, then "the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the employer meets its burden, the burden "shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination." *Id.* If the plaintiff can show pretext, that showing, coupled with the prima facie case, will usually be sufficient to survive summary judgment. *Id.*

The district court held that Stone could not establish the fourth element of a prima facie case. Stone was replaced by an African-American female and therefore was not replaced by someone outside of his protected class. Despite Stone's contentions that two white employees were treated more favorably than he, the district court disagreed. Stone pointed first to another manager, holding the same position as Stone, who gave a private golf lesson while on the clock. Stone reported this to a supervisor and the manager was disciplined for inaccurate time keeping. Stone also noted that an assistant manager was allowed to have a clerk assemble a computer and complete tournament sheets and score cards on the computer. The district court observed, however, that Stone provided no evidence of any manager, black or white, who engaged in the type or number of employment infractions that Stone did. The district court also emphasized that the manager who gave private golf lessons was given a written warning, much like those given to Stone after several of his incidents. As a result, the district court found that there was no way to equate the entirety of

Stone's work performance with one violation committed by either of these managers and concluded that Stone had not established a prima facie case.

This court has held that "in disparate treatment cases involving separate incidents of misconduct . . . for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'" *Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004) (holding that a district court erred when it suggested that "comparably serious" misconduct was by itself enough to make employees similarly situated rather than instructing the jury that the employees' circumstances must have been "nearly identical"); *see also Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000) (holding that an employee had not proved disparate treatment where the circumstances surrounding the disciplinary actions were different).

Under our precedent, Stone has not shown himself to be "similarly situated" to employees of a different race who engaged in nearly identical misconduct and yet were treated more favorably than he. As such, Stone has failed to make a prima facie case. Even if he had made such a case, he failed to establish that BREC's proffered reason for the termination – Stone's multiple violations of rules and policy – was pretextual.

## B. Harassment

Although he asserted a claim of harassment in the district court, Stone has not raised this issue on appeal, and therefore it is waived.[2] *See United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

## C. Retaliation

Stone alleges that he was subject to retaliation for his complaints of race discrimination. To establish a prima facie case for retaliation, Stone must

---

[2] Similarly, Stone has not raised any separate issue regarding his 42 U.S.C. § 1981 claim, apparently treating it the same as his Title VII discrimination claim.

demonstrate: "'(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). If Stone makes a prima facie case, the same *McDonnell Douglas* burden-shifting analysis is employed. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

The district court dismissed Stone's retaliation claim for failing to establish a prima facie case. Specifically, Stone did not show any casual connection between his termination and his complaint of race discrimination, nor did he show that any of BREC's proffered reasons for discipline were pretextual. On this appeal, Stone discusses complaints he allegedly made; however, he does not acknowledge any of BREC's proffered reasons for his termination or argue that they were pretextual. We conclude that the district court properly granted summary judgment on this claim.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.