# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 31, 2011

No. 11-10170
Summary Calendar

Lyle W. Cayce
Clerk

CEDRIC HOWARD,

Plaintiff - Appellant

v.

UNITED PARCEL SERVICE, INCORPORATED

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:09-CV-2074-K

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Cedric Howard ("Howard") appeals the district court's grant of summary judgment in favor of United Parcel Service, Inc. ("UPS") on his discrimination, retaliation, and hostile work environment claims. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**FACTS AND PROCEEDINGS**

The facts giving rise to Howard's claims were accurately recited by the district court[1] and are summarized as follows.

Howard, a black man, has been employed by UPS continuously since October 1982, when he was hired as an administrative clerk. By June 2007, he had advanced into management and was promoted to Feeder Division Manager. The new position required Howard to relocate from Dallas, Texas, where he had spent most of his career with UPS, to Oklahoma City. In his new role, Howard reported to district manager Nancy Koeper ("Koeper").

The transition to his new job in Oklahoma City was not entirely smooth. Howard had several problems during his first few months on the job, including: (1) arguing with a security guard over a reserved parking spot; (2) changing job classifications and pay rates of union employees in his division without authorization; (3) sending excessive e-mails and copying clerical staff on management e-mails; and (4) allegedly coercing his subordinates to make United Way donations.

There were also several incidents between Howard and Koeper. In a July 2007 meeting to discuss some of Howard's transition issues, Howard claims Koeper stated: "you Texas boys come to my district and think you're going to do things your way . . .". Howard interpreted the term "boy" as a racial slur. Howard also claims Koeper made an inappropriate racial comment during a business trip toward the end of 2007. Howard, Koeper, and two other white co-workers were driving to Lubbock, Texas, when they were stopped by a Texas state trooper. Howard claims that Koeper opined that the state trooper would

---

[1] *Howard v. United Parcel Serv., Inc.*, No. 3:09-CV-2074-K, 2011 WL 195682, at *1–2 (N.D. Tex. Jan. 18, 2011).

not have pulled the car over but for the presence of Howard in the back seat.

There was more trouble in Howard's division during UPS's "peak time," the 2007 holiday season. In December 2007, Howard's division experienced several major problems: (1) three shipments comprising hundreds of packages were delayed en route to customers; (2) the division was cited for federal service hour violations; and (3) UPS had to pay triple overtime to drivers in the division due to staffing shortages.

UPS investigated and concluded that Howard was responsible for the "peak time" problems and that he had not been forthright during the investigation. He claims other managers and contract obligations were to blame for the issues.

Following the investigation, Howard was demoted in February 2008, to a management job that he had previously held. His Oklahoma City position was eliminated and the duties were absorbed by a white manager. His salary was not reduced but he lost stock options and relocation expense benefits as result of the demotion. Howard remains employed by UPS in Dallas.

Howard filed a complaint of racial discrimination and retaliation in a letter to UPS's management committee in June 2008. Howard claimed he was demoted due to racial discrimination and that white employees had made similar mistakes without being demoted. UPS human resources investigated Howard's complaint but could not substantiate any of his claims.

Howard filed this lawsuit in August 2009, claiming discrimination, retaliation, and hostile work environment in connection with his demotion. UPS moved for summary judgment in October 2010. The district court granted summary judgment on all claims. Howard appeals.

## STANDARD OF REVIEW

We review the district court's decision to grant a motion for summary

judgment *de novo*. *Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 217 (5th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## DISCUSSION

### A.     Racial Discrimination

Howard, as the plaintiff in an employment discrimination case, may present either direct or circumstantial evidence of intentional discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). When presenting only circumstantial evidence that his demotion was motivated by racial discrimination, such as here, the court applies the *McDonnell Douglas* burden-shifting analysis. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that analysis, Howard must first present evidence establishing the existence of a prima facie case of race discrimination. *Id.*

To establish a prima facie case of racial discrimination, Howard must prove that he: (1) is a member of a protected group or class; (2) was qualified for his position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, other similarly-situated employees were treated more favorably, or he was otherwise demoted because of his race. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

After Howard establishes a prima facie case, the burden shifts to UPS to show a legitimate, nondiscriminatory reason for the adverse employment action. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). UPS's

burden is one of production, not persuasion, and does not involve a credibility assessment. *Id.*

Once UPS has met this requirement, the burden then shifts back to Howard to show either: "(1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (alteration in original).

Though contested by UPS, the district court was correct in finding that Howard established a prima facie case of discrimination. Howard was: (1) a member of a protected class, (2) qualified for the position, (3) subjected to an adverse employment action when he was demoted, and (4) was "replaced" when his former job duties were absorbed by a white employee.[2]

The district court was also correct in finding that UPS produced legitimate, nondiscriminatory reasons for Howard's demotion. Generally, UPS maintains that Howard was demoted for poor job performance, questions about his integrity, and a lack of confidence in his ability to ability to manage a district-wide department. The record reflects UPS's reasons are supported by

---

[2] UPS argues the district court erred in finding the fourth prong was met because the position held by Howard was eliminated following Howard's demotion. Citing unpublished cases from this court and several district courts, UPS argues that when a position is eliminated, the job duties are absorbed by other existing employees, and no additional employees are hired, a prima facie case is not established because Howard was not "replaced" by someone outside the protected class. While this court has acknowledged differences between job "replacement" and "elimination" cases, those distinctions are more clearly applicable when the case involves layoffs or employer-planned reductions in force as opposed to the elimination of the single job at issue, such as here. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149-50 (5th Cir. 1995). Because the record reflects that only Howard's specific position was eliminated and his duties were assumed by someone outside the protected class, Howard has made a prima facie showing of discrimination.

numerous specific incidents, including: (1) major operational problems in Howard's division during the December 2007 "peak time," including federal service hour violations, (2) conflicts with subordinates over allegedly coerced support of the United Way, (3) sending improper and excessive emails to subordinates, including distributing management information to clerical staff, (4) changing job classifications of union employees without proper communication with the union, (5) moving a fellow manager's office without notice, (6) getting into an argument with a security guard over a reserved parking spot, (7) giving inaccurate feedback to regional management, and (8) a significant rise in the number of labor grievances filed by employees in Howard's department. This collection of reasons met UPS's burden. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. . . . [A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence.") (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)) (alterations in original).

The last step in the analysis is whether Howard has provided sufficient evidence demonstrating that UPS's legitimate reasons for firing him were merely a pretext. However, "[o]ur job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). As the district court properly found, Howard offers no evidence suggesting that he was demoted with unlawful motive as opposed to an honest effort to get his performance back to previous levels.

While Howard offers alternative arguments he claims are evidence of pretext, his arguments fail to demonstrate that UPS's stated reasons for the

demotion were not truthful. First, Howard's argument that UPS failed to comply with its internal discipline procedures, namely failure to place him in a performance improvement program, is not itself evidence of pretext. Howard has not introduced evidence that UPS adhered to its disciplinary policies differently in cases involving non-minority employees. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) ("A defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact.") (quoting *Upshaw v. Dallas Heart Grp.*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997)).

Howard's other argument that UPS has offered conflicting reasons for his demotion and his accompanying litany of explanations as to why other employees were at least partly to blame for the reasons UPS gave for his demotion similarly fail to call the legitimacy of UPS's stated reasons into question. As reflected by the record, this is not a scenario in which one or two UPS officials have created a questionable history of poor performance as pretext for a discriminatory motive. Instead, the record shows numerous UPS individuals were involved in documenting the various incidents cited by UPS as the basis for Howard's demotion. Moreover, each of the incidents standing alone would be sufficient for UPS's decision to demote Howard, all the more when viewed in aggregate. UPS's reasons are neither conflicting nor the fault of other employees. Instead of pretext, UPS's reasons show a series of setbacks for a newly promoted manager which resulted in UPS's decision to demote Howard. Thus, there is no genuine issue of material fact that precluded the district court's grant of summary judgment.

### B. Retaliation

Howard also claims that UPS demoted him in retaliation for reporting Nancy Koeper's "Texas boy" comment to the West Region Transportation Manger Bob Hannigan. Here too the district court was correct in granting summary judgment in favor of UPS.

"[I]n order to establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) there is a causal link between the protected activity and the adverse employment action." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). When the plaintiff presents circumstantial evidence of retaliation, we use the same *McDonnell Douglas* burden shifting framework used for discrimination claims. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

Like his discrimination claim, Howard has shown a prima facie case of retaliation: (1) he engaged in protected behavior when he reported the "Texas boy" comment to higher management, (2) his demotion was an adverse employment action, and (3) he has shown a connection between his reporting of the "Texas boy" comment and his supervisor Nancy Koeper's refusal to meet one-on-one with him after he reported the comment. Likewise, UPS has met its burden of providing legitimate nondiscriminatory reasons for Howard's demotion, pointing to the same set of incidents addressed in connection with Howard's discrimination claim.

Like the discrimination claim, the dispositive question is therefore whether Howard has presented sufficient evidence to create a genuine question of material fact as to whether UPS's reasons for his demotion were a pretext for retaliation. And again, the district court correctly found that Howard has not presented sufficient evidence to create a genuine issue of material fact.

Howard offers no new arguments or facts alleging pretext with respect to

his retaliation claim other than those offered in connection with his discrimination claim. Claiming the district court erred in failing to find UPS's reasons for retaliation pretextual, Howard simply points out that the district court's reasoning directly tracks its discrimination analysis. This is neither unexpected nor error because Howard presented no new facts or arguments. Accordingly, the district court was correct in granting summary judgment in favor of UPS on Howard's retaliation claim for the reasons discussed above.

### C. Hostile Work Environment

Howard's final argument is that the district court erred in granting summary judgment to UPS on his hostile work environment claim. To survive summary judgment on a hostile work environment claim, Howard must establish that (1) he is a member of a protected class; (2) he was subject to unwelcome harassment; (3) the harassment affected a term or condition of his employment; and (4) that UPS knew or should have known about the harassment and failed to take prompt remedial action. *Turner*, 476 F.3d at 347.

We review the elements of the hostile work environment claim using a totality-of-the-circumstances test that focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Although "[d]iscriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive" to support evidence of a hostile work environment claim, *DeAngelis v. El Paso Municipal Police Officers Association*, 51 F.3d 591, 593 (5th Cir. 1995), "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal

citation omitted) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Furthermore, the Supreme Court has warned that these high standards are intentionally demanding "to ensure that Title VII does not become a 'general civility code,'" *Faragher*, 524 U.S. at 788, and when properly applied, "they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language." *Id.*

Here, accepting the district court's findings that Howard is a member of a protected class and that he was subject to harassment in the form of Ms. Koeper's "Texas boy" comment, Howard fails to create a genuine issue of material fact that the environment rose to a level of interfering with his work performance. Instead, Howard argues that there was "generally an environment hostile to African Americans" in the UPS Oklahoma City facility. Howard also relies on an allegation by a former UPS employee that the former employee overheard racial slurs in a different UPS facility and a statement by a human resources manager that Howard was "a target"—a comment made in context of Howard's mounting performance issues in his new managerial role and not his racial status.

Taken together, Howard's arguments fall far short of demonstrating a severe and pervasive hostile work environment. *See Turner*, 476 F.3d at 348 (explaining that comments to a black female employee about "ghetto children" and additional derogatory comments about the employee's education, car, and shopping habits were not sufficient to demonstrate a hostile work environment). While the "Texas boy" comment was perhaps racially inappropriate, Howard has not shown an ongoing pattern of racially inappropriate incidents directed towards him. Without showing such a pattern, Howard's reliance on *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154 (5th Cir. 2008), is misplaced because *Abner* addressed a situation where the employee was subjected to

10

multiple threats of violence and racial slurs from his co-workers and supervisors. Here, we have alleged isolated incidents of questionable conduct, some of which did not even involve Howard personally. This is insufficient to raise a genuine issue of material fact and the district court's grant of summary judgment in favor of UPS was therefore correct.

## CONCLUSION

Howard has not demonstrated a genuine issue of material fact evidencing unlawful discrimination, retaliation, or hostile work environment by UPS. The district court's grant of summary judgment is AFFIRMED.