# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30790

United States Court of Appeals
Fifth Circuit

**FILED**
February 6, 2019

Lyle W. Cayce
Clerk

DAVID D. PETERSON,

      Plaintiff - Appellant

v.

LINEAR CONTROLS, INCORPORATED,

      Defendant - Appellee

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC. No. 6:16-CV-725

---

Before STEWART, Chief Judge, and SOUTHWICK and ENGELHARDT, Circuit Judges.

PER CURIAM:*

David Peterson sued his former employer, Linear Controls, alleging a hostile work environment and discrimination based on race under Title VII. The magistrate judge granted summary judgment to Linear Controls on each of Peterson's claims. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-30790

**I.**

Peterson worked at Linear Controls for six years, primarily as an offshore electrician. During his last job assignment with the company, Peterson worked at Fieldwood Energy's East Breaks 165 platform. His assignment lasted six weeks, from July 16, 2015 to August 22, 2015 (including a week-long break). In September 2015, Peterson resigned from Linear Controls via letter, explaining that he intended to continue his education as an electrician.

A month later, Peterson filed an EEOC charge against Linear Controls, alleging discrimination and retaliation on the basis of race (black) and religion (Muslim). Peterson reported that he was subjected to "Muslim jokes and comments because of [his] religious beliefs (not eating pork)." He also reported "different terms and conditions of employment" in two instances. First, he was one of four employees to arrive late to a safety meeting, but only he—the sole black employee—was written up. Second, he was on a team of five white employees and five black employees, and the black employees had to work outside and were not permitted water breaks, while the white employees worked inside with air conditioning and were given water breaks. Peterson also alleged that his managers would "judge [his] appearance and overlook [his] work." The EEOC issued a right to sue letter on request, and Peterson filed suit against Linear Controls.

After Peterson and Linear Controls submitted sworn statements from various Linear Controls employees to support their positions, Linear Controls moved for summary judgment. A magistrate judge, ruling by the parties' consent, granted summary judgment to Linear Controls on all claims. Peterson appeals the dismissal of two claims: hostile work environment and discrimination based on race.

No. 17-30790

## II.

We review a grant of summary judgment de novo. *Rayborn v. Bossier Par. Sch. Bd.,* 881 F.3d 409, 414 (5th Cir. 2018). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding if there is a genuine issue of material fact, "courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Rayborn*, 881 F.3d at 414 (quotation omitted).

## III.

Peterson appeals the dismissal of his Title VII racial discrimination claim. The magistrate judge analyzed this claim as one relying on circumstantial evidence of discrimination and subject to *McDonnell Douglas*'s burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *McDonnell Douglas* requires a plaintiff to demonstrate that "(1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (quotation omitted). The magistrate judge held that Peterson did not allege an adverse employment action and did not adequately identify a similarly situated comparator. Peterson contends that the magistrate judge improperly excluded witness declarations that identified (1) similarly situated comparators and (2) direct evidence of discrimination sufficient to escape the *McDonnell Douglas* framework and defeat summary judgment.

No. 17-30790

Peterson's arguments fail to revive his claim. Assuming the declarations identify similarly situated comparators, Peterson still cannot satisfy Title VII's adverse employment action requirement. *Paske*, 785 F.3d at 985.

Our court strictly construes adverse employment actions to include only "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559, 560 (5th Cir. 2007). Peterson alleged that he and his black team members had to work outside without access to water, while his white team members worked inside with air conditioning. Taking this as true, the magistrate judge did not err in holding that these working conditions are not adverse employment actions because they do not concern ultimate employment decisions. *Id.*; *see also Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485–86 (5th Cir. 2008).

Peterson also contends that the district court ignored direct evidence of discrimination sufficient to defeat summary judgment. Peterson's complaint alleged that his supervisor denied him leave from work to visit a sick family member and later, when discussing Peterson's request with another employee, said "[f***] that [n*****]."

Racial slurs may "constitute[] direct evidence that racial animus was a motivating factor" behind an adverse employment action. *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). Such language must be (1) "proximate in time" to the action, (2) "made by an individual with authority" over the action, and (3) "related to the" action. *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996), *abrogated on other grounds by Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 134 (2000). At first glance, Peterson's allegations appear to meet this test. His complaint states that his supervisor denied him leave, an adverse employment action, and then in the context of that denial called Peterson the n-word to another employee. But Peterson's deposition testimony belies the allegations in his complaint. He

acknowledges he was allowed to "go in"—leave the offshore site—to visit his sick fiancée. A supervisor warned Peterson he might not be allowed to return to the same job if he left, but Peterson admits that he was allowed to return. Another Linear Controls employee's declaration confirms that Peterson was permitted to leave on this occasion and others. As the magistrate judge determined, there is no evidence that Peterson was denied leave. Because Peterson was not subjected to an adverse employment action, we affirm the dismissal of his Title VII racial discrimination claim. Peterson's reliance on *Reeves* does not save his claim, because he cannot make out a prima facie case of discrimination without an adverse employment action. *Reeves,* 530 U.S. at 142–43.

## IV.

Peterson also appeals the dismissal of his hostile work environment claim. A prima facie case of hostile work environment requires a plaintiff show that: (1) he "belongs to a protected group;" (2) he was "subject to unwelcome [ ] harassment;" (3) the harassment was based on a protected characteristic; and (4) the harassment "affected a term, condition, or privilege of [his] employment." *Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir. 1999) (quotation omitted).[1]

The magistrate judge granted Linear Controls' motion for summary judgment on Peterson's hostile work environment claim, finding the alleged harassment did not affect a term, condition, or privilege of Peterson's employment. Peterson alleged that, for ten days in July 2015, the black members of his team worked outside in the heat while the white members of

---

[1] A fifth element exists when a coworker, rather than a supervisor, creates the hostile work environment. Peterson's allegations concern a supervisor, so we do not consider this element. *See Lauderdale v. Tex. Dep't of Criminal Justice, Inst. Div.,* 512 F.3d 157, 162–63 (5th Cir. 2007).

No. 17-30790

his team worked inside in the air conditioning. He also alleged that black employees were routinely denied water breaks, but in his deposition admitted there was only one instance in which he was denied a water break. The magistrate judge held that Peterson's allegations did not create a hostile work environment because (1) Peterson's job description required working in an outdoor environment; (2) he worked at Linear Controls for seven years, but his allegations only concerned a ten-day period; and (3) the assignment did not cause him physical injury or harm.

Whether harassing conduct is sufficiently severe or pervasive to affect a term, condition, or privilege of employment depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" or workplace competence. *Harvill v. Westward Commc'ns, LLC,* 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Harris v. Forklift,* 510 U.S. 17, 23 (1993)).

Peterson did not allege sufficiently severe or pervasive conduct. He worked for Linear Controls for six years, but his allegations regarding harsher job assignments concern only one ten-day period. More is generally required to show pervasive harassment. *See, e.g., Watkins v. Recreation and Park Comm'n for the City of Baton Rouge,* 594 F. App'x 838, 841 (5th Cir. 2014) (rejecting claim premised on three instances of racially charged language and symbols over eight-year employment); *Lauderdale,* 512 F.3d at 164 (reviving claim when a supervisor called his employee "ten to fifteen times a night for almost four months").

Additionally, he does not allege that his job performance or career outlook were affected. Peterson's job description required him to work outside, and the work he completed was not physically threatening or humiliating.

6

No. 17-30790

Peterson does not allege that working outside interfered with his job performance or competence. In fact, his responsibilities demonstrably progressed over his time at Linear Controls. He moved up the ranks from helper to electrician and was offered a higher paying position in maintenance, which he turned down. The totality of the circumstances do not present a hostile work environment. *See, e.g., Jackson v. Honeywell Int'l, Inc.,* 601 F. App'x 280, 287–88 (5th Cir. 2015) (rejecting claim because plaintiff testified that racial slurs did not unreasonably interfere with his work performance or job satisfaction).

Peterson's coworker's statement that a supervisor used the n-word to describe Peterson does not change our analysis of this claim. The one-time use of that despicable word does not comport with our court's conception of a hostile work environment. *See, e.g., Howard v. United Parcel Serv., Inc.,* 447 F. App'x 626, 632 (5th Cir. 2011) (rejecting claim grounded in one "racially inappropriate" term directed toward plaintiff and allegations that other employees overheard racial slurs). This is particularly true here, where Peterson did not hear the slur. *See Johnson v. TCB Constr. Co. Inc.,* 334 F. App'x 666, 671 (5th Cir. 2009) (rejecting claim when supervisor frequently used n-word outside plaintiff's presence but there was no evidence it affected plaintiff's job).

Peterson also argues that the ten-day period was a particularly "egregious incident" creating a hostile work environment. He admits that he did not present this argument to the trial court. Generally, an argument "not raised in the district court cannot be asserted for the first time on appeal." *Horton v. Bank One, N.A.,* 387 F.3d 426, 435 (5th Cir. 2004) (quotations omitted). There is an exception, however, when the issues presented to the district court would have permitted the district court to "rule on the essential argument" advanced on appeal. *Lifemark Hosps., Inc. v. Liljeberg Enters., Inc.,*

7

304 F.3d 410, 427 n.29 (5th Cir. 2002). But even if Peterson activated this exception by presenting a standard hostile work environment claim to the district court, his "egregious incident" argument cannot survive on the merits.

Egregious, isolated incidents "can alter the terms and conditions of employment." *Harvill*, 433 F.3d at 435. An example of an egregious race-based incident arose when a company's supervisors brought in a white woman in a gorilla suit who made sexually and racially offensive comments about black employees on Juneteenth. *Henry v. Corpcar Servs. Hous., Ltd.,* 625 F. App'x 607, 608–09 (5th Cir. 2015). She also touched them inappropriately and without consent. *Id.* This single, egregious incident created a hostile work environment considering the social context of the gorilla costume and Juneteenth; the incident's physically humiliating nature; and the demonstrable impact on black employees' job performance and outlook. *Id.* at 613.

The conduct Peterson alleged does not meet this standard. Peterson's claim that black employees were given unfavorable working conditions is disturbing given the racial makeup of Linear Controls' workforce and the allegation that a supervisor referred to Peterson as the n-word. But social context is not the only factor we consider. *See id.* Peterson was directed to perform tasks that fell within his job description. *See Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) ("No reasonable jury could conclude that being assigned duties that were part of one's job description . . . amount[s] to a hostile work environment."). He does not claim he was physically humiliated, *see Paul v. Northrop Grumman Ship Sys.,* 309 F. App'x 825, 829 (5th Cir. 2009) (listing the physical harassment alleged in "egregious" cases of harassment), or that his job performance was affected, *see Henry*, 625 F. App'x at 613 (describing how plaintiff "suffered from severe anxiety, depression, anger, and nervousness" before resigning). Under the totality of the circumstances here,

No. 17-30790

Peterson did not allege an egregious incident creating a hostile work environment.

## V.

For the foregoing reasons, we AFFIRM the dismissal of Peterson's claims.