

# NUMBER 13-21-00454-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

TEXAS SOUTHMOST COLLEGE,                                        Appellant,

v.

LINDA HERNANDEZ,                                                Appellee.

## On appeal from the 445th District Court
## of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña**
**Memorandum Opinion by Justice Benavides**

In this employment dispute, appellee Linda Hernandez filed suit against appellant Texas Southmost College ("TSC") for retaliation and gender and age discrimination. The trial court denied TSC's plea to the jurisdiction, and on appeal, TSC maintains that it is immune from Hernandez's claims. We affirm in part and reverse and render in part.

## I.  BACKGROUND

### A.  Hernandez's Employment History with TSC

In 2014, TSC hired Hernandez as a speech instructor. Hernandez's employment contract was renewed on a yearly basis. According to her live pleading, Hernandez had never been disciplined, reprimanded, or suspended during her employment, and she received an evaluation of "satisfactory" for her performance during the 2017–2018 academic year.

### B.  Hernandez's Role as TSC Faculty Senate President

During the same academic year, Hernandez served as the TSC Faculty Senate President. According to its constitution, the purpose of the TSC Faculty Senate is to represent faculty interests and make recommendations to TSC administration. Among its objectives, the members of TSC Faculty Senate "[w]ork as agents to negotiate and represent the well-being of the faculty membership." Hernandez's duties as TSC Faculty Senate President included acting "as liaison between the faculty and the college administration." The constitution further provides that "recommendations made by the Faculty Senate will be transmitted by the President of the Faculty Senate to the President of the College, the Vice President for Academic Affairs, or other administrative personnel." However, "[i]n the event that no resolution to a specific issue occurs, the Faculty Senate may bring the matter before the Board of Trustees."

### C.  Relevant TSC Policies

TSC has an employee grievance policy that details the necessary steps for presenting employment-related complaints. However, the grievance policy does not apply

to discrimination or retaliation complaints. Rather, such complaints are governed by TSC's "Freedom from Discrimination, Harassment, and Retaliation" policy ("Anti-Discrimination Policy"), which "addresses discrimination, harassment, and retaliation involving [TSC] employees." The Anti-Discrimination Policy states that "[a]n employee who believes that he or she has experienced prohibited conduct or believes that another employee has experienced prohibited conduct should immediately report the alleged acts." An employee may report their concerns to their immediate supervisor, the Title IX coordinator, or the TSC President.

Among other conduct, the Anti-Discrimination Policy "prohibits retaliation against an . . . employee who, in good faith, makes a report, serves as a witness, or otherwise participates in an investigation." The policy lists "refusal to hire" as an example of retaliation. The policy also provides that "[a]n employee who intentionally makes a false claim . . . regarding harassment or discrimination [will be] subject to appropriate discipline."

The Anti-Discrimination Policy permits TSC to engage a third party, such as an attorney, to formally investigate a complaint. The third-party investigator is required to prepare a written report and submit it to TSC. Finally, the policy states that "[t]o the greatest extent possible, [TSC] shall respect the privacy of the complainant, persons against whom a report is filed, and witnesses"; however, "[l]imited disclosures may be necessary in order to conduct a thorough investigation and comply with applicable law."

**D.      Hernandez's Allegations of Discrimination, Harassment, and Retaliation**

On January 4, 2018, Hernandez, acting in her capacity as TSC Faculty Senate

3

President, sent the following text message to a member of the TSC Board of Trustees:

> I will be calling a vote of no confidence before the board for key administrators who have many times impeded on the matters of shared governance by faculty and who have also acted criminally concerning dismissal of faculty and staff. I would like to meet with the board so this matter doesn't side swipe you, and so you understand the severity of immediate dismissal of such individuals once I call for the vote of no confidence. On another note, I hope you're having a wonderful Christmas with family.

On January 8, 2018, Hernandez, again acting in her capacity as TSC Faculty Senate President, sent a lengthy email to TSC President Jesus Rodriguez and Vice President of Instruction Joanna Kile with the subject line, "Vote of no confidence." In what would later become a source of contention between the parties, Hernandez also copied seven TSC Faculty Senate members and one TSC Staff Senate member on the email. The email begins with Hernandez acknowledging that she "already alerted a board member that a vote of no confidence on key administrators would be called before the board." Hernandez then identified Lissa Frausto and Angelica Fuentes as the administrators in question and generally alleged that they had engaged in "repeated patterns concerning forced resignations . . . [and] other severe instances." Hernandez then recounted instances where Frausto, Fuentes, or both allegedly mistreated a former staff member, two former faculty members, and two current faculty members, including herself.

Many of the allegations in the email did not concern conduct that is unlawful. For example, Hernandez complained that Fuentes is vindictive, and thus, faculty are not free to express dissenting opinions because Fuentes may "retaliate" against them. Hernandez also complained about a lack of shared governance between TSC administration and

4

faculty. However, other allegations in the email did raise concerns about age and gender discrimination against former and current faculty members, as well as a former staff member. None of the allegations Hernandez made about her personal experiences with Frausto or Fuentes concerned unlawful conduct.

**E.** **TSC Hires a Third-Party to Investigate Hernandez's Complaints**

Consequently, TSC engaged attorney Bernardo Garza to investigate Hernandez's allegations. On May 17, 2018, Garza issued a written report detailing his investigation, including the interviews he conducted with Hernandez, Fuentes, and Frausto, as well as various other administrators, faculty, and staff. Garza ultimately found "[n]o evidence" of discrimination, harassment, or retaliation based on protected activities.

**F.** **TSC Decides Not to Renew Hernandez's Contract**

Vice President Kile initially recommended the renewal of Hernandez's employment contract for the 2018–2019 academic year. However, upon reviewing Garza's report, Kile changed her recommendation. In a June 1, 2018 email to President Rodriguez, Kile explained that, "Based on the results of the investigative report and [Hernandez's] exposure of the institution to potential liability, I do not recommend her contract be renewed." President Rodriguez accepted Kile's new recommendation, and Hernandez was informed on June 27, 2018, that her contract would not be renewed.

Hernandez initiated TSC's formal grievance process, challenging the decision not to renew her contract. Frausto presided over the hearing and issued a written decision denying Hernandez's grievance. In the decision, Frausto explained that the issues raised in Hernandez's January 8 email "were not within the explicit purview of the Faculty

5

Senate." Frausto also found that by copying other senators on the email, Hernandez "failed to consider the privacy and property rights of those named in the email." According to Frausto, those individuals copied on the email "had no reason to have that kind of information," and by disclosing the allegations without the consent of those accused of wrongdoing, Hernandez had "exposed [TSC] to liability." Finally, Frausto cited Garza's findings that no unlawful conduct occurred.

## G. Trial Court Proceedings

After receiving her right-to-sue letter from the Texas Workforce Commission, Hernandez timely filed suit for wrongful termination, generally alleging claims of age and gender discrimination, as well as retaliation for engaging in protected activities.

TSC filed a general denial. Several months later, TSC filed a business records affidavit, along with eighty-four pages of records, and an additional affidavit from Frausto explaining TSC's decision not to renew Hernandez's contract: "The grounds for the non-renewal included that Ms. Hernandez made unsubstantiated allegations of purported improper, criminal and tortious conduct by employees of [TSC] and published such allegations to multiple other employees of [TSC] via a college email account."

TSC subsequently filed a plea to the jurisdiction, arguing that Hernandez could not establish a prima facie case for any of her claims and that TSC had legitimate, nondiscriminatory, nonretaliatory reasons for not renewing her contract. TSC submitted eight exhibits in support of its plea, including copies of Hernandez's January 8 email to President Rodriguez, Garza's written report, an affidavit from President Rodriguez, and records pertaining to the person TSC allegedly hired to replace Hernandez.

6

Hernandez filed a response in opposition to the plea and attached eighteen exhibits to the response, including portions of deposition transcripts, copies of the TSC Faculty Senate Constitution, and Hernandez's sworn declaration. In that declaration, Hernandez made the following statements in support of her age and gender discrimination claims:

> I was replaced by Samantha Duque. She assumed the majority of my classes in the Fall of 2018. She is over 12 years younger than me and was under 40 years of age at the time that my contract was non-renewed. I was over 40 years old at the time my contract was non-renewed.
>
> . . . .
>
> I am an outspoken female. Because of this, Dr. Rodriguez would talk down to me and demean me. He treated outspoken males better than me. One of those males was Blas Breceda[,] who was also [a member of] Faculty Senate. [Breceda] almost got into a fist fight with Dr. Rodriguez[,] and he was not terminated.

Hernandez also amended her petition by elaborating on the factual basis of her claims.

After conducting a hearing, the trial court denied TSC's plea. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. STANDARD OF REVIEW & APPLICABLE LAW

Subject matter jurisdiction is essential to a court's authority to decide a case. *In re Abbott*, 601 S.W.3d 802, 807 (Tex. 2020) (original proceeding) (per curiam) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993)). Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016).

Sovereign immunity is a common-law doctrine that protects the State and its agencies from lawsuits for money damages and deprives a trial court of subject matter

7

jurisdiction over the plaintiff's claims. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 & n.2 (Tex. 2008) ("*Garcia I*"). Governmental entities in Texas generally enjoy immunity from suit unless the Legislature has expressly waived their immunity by statute. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

"A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction." *Town of Shady Shore v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012)). Accordingly, when a plaintiff sues a governmental entity, they must allege facts that fall within a legislative waiver of immunity. *Id.* (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)). A governmental defendant may challenge the trial court's jurisdiction by attacking the plaintiff's pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018).

Whether a plaintiff has sufficiently pleaded a waiver of immunity is a question of law we review de novo. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). In reviewing the plaintiff's pleadings, we accept as true the facts alleged, construe the pleadings liberally, and look to the plaintiff's intent. *See Miranda*, 133 S.W.3d at 226.

When a defendant challenges the existence of jurisdictional facts, the analysis "mirrors that of a traditional summary judgment." *Tex. Dep't of Transp. v. Lara*, 625 S.W.3d 46, 52 (Tex. 2021) (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372

8

S.W.3d 629, 634 (Tex. 2012) ("*Garcia II*")). As such, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in their favor. *Id.* (citing *Alamo Heights*, 544 S.W.3d at 771). Once a governmental entity establishes the absence of a jurisdictional fact, the burden shifts to the plaintiff to raise a genuine issue of material fact for the jury to resolve; otherwise, the trial court should rule on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

The Texas Commission on Human Rights Act (TCHRA) prohibits employers from discriminating against employees based on "race, color, disability, religion, sex, national origin, or age." TEX. LAB. CODE ANN. § 21.051. The TCHRA also prohibits employers from retaliating against employees for engaging in certain protected activities, such as opposing discriminatory practices, reporting discrimination, or participating in an investigation. *Id.* § 21.055. The TCHRA waives a governmental employer's immunity from suit for violations under the act. *Alamo Heights*, 544 S.W.3d at 770 (citing *Garcia II*, 372 S.W.3d at 637); *see* TEX. LAB. CODE ANN. § 21.254 (permitting an employee to "bring a civil action against" their employer).

Because the TCHRA was modeled after federal statutes, Texas courts are guided by federal precedent interpreting those statutes. *Lara*, 625 S.W.3d at 52 (citing *Garcia II*, 372 S.W.3d at 634). Violations of the TCHRA can be established with either direct or circumstantial evidence, and for cases based on circumstantial evidence, Texas courts employ the three-part *McDonnell Douglas* burden-shifting framework. *Alamo Heights*, 544 S.W.3d at 781–82 (first citing *Garcia II*, 372 S.W.3d at 634; and then citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). First, the employee must

9

establish a prima facie case, which gives rise to a rebuttable presumption that a statutory violation occurred. *Id.* at 782 (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–54 (1981)). The employer may then rebut this presumption by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action. *Id.* (citing *Burdine*, 450 U.S. at 254–55). "Once rebutted, the presumption disappears, and an employee lacking direct evidence cannot prove a statutory violation without evidence that the employer's stated reason is false and a pretext for discrimination." *Id.* (citing *Burdine*, 450 U.S. at 255–56). Each step of the *McDonnell Douglas* analysis is jurisdictional in nature. *Id.* at 783.

However, when direct evidence of discrimination or retaliation exists, the *McDonnell Douglass* burden-shifting framework is not implicated. *Democratic Schs. Rsch., Inc. v. Rock*, 608 S.W.3d 290, 308 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *Garcia II*, 372 S.W.3d at 634). "Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* at 307 (quoting *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 433 (Tex. App.—Houston [1st Dist.] 2016, pet. denied)). "In both direct- and circumstantial-evidence cases, the burden of persuasion remains at all times with the employee." *Alamo Heights*, 544 S.W.3d at 782 (citing *Burdine*, 450 U.S. at 253).

## III.   ANALYSIS

The parties agree that TSC is a governmental entity generally entitled to immunity and that Hernandez suffered an adverse employment action when her contract was not renewed. TSC argues, however, that Hernandez cannot establish other prima facie

elements of her claims and that it had legitimate, nondiscriminatory, nonretaliatory reasons for not renewing her contract. We conclude that the record contains direct evidence of retaliation but that Hernandez failed to establish prima facie cases of age and gender discrimination.

## A. Defining the Jurisdictional Record on Appeal

As a preliminary matter, we must determine the scope of the jurisdictional record on appeal. Hernandez contends that we should not consider any jurisdictional evidence submitted by TSC because, unlike Hernandez, TSC failed to have its supporting documents "admitted" into evidence during the jurisdictional hearing. Hernandez notes that, upon her request, the trial court "admitted" the same eighteen exhibits attached to her response, while "TSC offered no evidence at the hearing."

As previously mentioned, when a defendant challenges the existence of jurisdictional facts, the analysis "mirrors that of a traditional summary judgment." *Lara*, 625 S.W.3d at 52 (quoting *Garcia II*, 372 S.W.3d at 634). Therefore, "[t]he trial court is allowed to conduct a hearing on a plea to the jurisdiction or motion to dismiss for lack of jurisdiction in a manner similar to how it hears a summary judgment motion, and may consider affidavits and other summary judgment-type evidence." *FKM P'ship v. Bd. of Regents of Univ. of Hous. Sys.*, 255 S.W.3d 619, 628 (Tex. 2008) (citing *Miranda,* 133 S.W.3d at 227). In fact, when subject matter jurisdiction is in play, "the trial court *must* consider relevant evidence submitted by the parties." *Miranda,* 133 S.W.3d at 227 (emphasis added) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)).

Of course, in summary judgment practice, the parties are required to file their evidence in advance of any summary judgment hearing, just as the parties did here. *See* TEX. R. CIV. P. 166a(c). We are aware of no authority requiring a party to take the additional step of asking the trial court to "admit" previously submitted summary judgment evidence. If a party seeks to exclude their opponent's summary judgment evidence, they must object and obtain a ruling from the trial court. *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164 (Tex. 2018) (per curiam) (first citing *Mansions in the Forest, L.P. v. Montgomery County*, 365 S.W.3d 314, 317 (Tex. 2012) (per curiam); and then citing TEX. R. APP. P. 33.1(a)(2)); *see also* TEX. R. CIV. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). Otherwise, the trial court will make its decision based on the summary judgment record "on file at the time of the hearing." TEX. R. CIV. P. 166a(c).

Here, TSC previously filed a business records affidavit and a notice of its intent to use the attached records. TSC then attached eight additional exhibits to its plea to the jurisdiction and referred to both sets of evidence in its plea. Hernandez failed to object to any of TSC's evidence, and thus, the trial court was required to consider the evidence submitted by both parties. *See Miranda,* 133 S.W.3d at 227; *Seim*, 551 S.W.3d at 164. Accordingly, we will consider the entire jurisdictional record in our analysis and now turn to the merits of the appeal. *See Miranda,* 133 S.W.3d at 227.

## B.    The Record Contains Direct Evidence of Retaliation

To establish a retaliation claim, the employee must show (1) she engaged in a

protected activity under the TCHRA, (2) she experienced a material adverse employment action, and (3) a causal link exists between the protected activity and the adverse action. *Alamo Heights*, 544 S.W.3d at 782. TSC contends that the jurisdictional evidence negates the first and third elements of Hernandez's retaliation claim. Hernandez responds that the record contains direct evidence of retaliation. We agree with Hernandez.

As to the first element, TSC argues that Hernandez's email to President Rodriguez was not a protected activity.[1] To support its argument, TSC selectively quotes portions of the email where Hernandez raised issues not related to discriminatory practices, such as shared governance. However, TSC ignores other portions of the email where Hernandez plainly alleged that Frausto and Fuentes had engaged in age and gender discrimination, saying, for example, that two past faculty members were "older individuals" who "should not fear retaliation based on age" and that a current faculty member "falls under a protect[ed] class concerning harassment as defined by the EEOC." *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008) (making an internal complaint about discriminatory practices is a protected activity under the TCHRA).

Indeed, TSC retained Garza to investigate Hernandez's claims in accordance with its Anti-Discrimination Policy. Conversely, TSC's grievance policy, which specifically excludes complaints made under the Anti-Discrimination Policy, does not contemplate hiring a third-party investigator and provides a completely different process for addressing general faculty complaints. And while Garza commented on other employment practices

---

[1] In its brief, TSC does not address Hernandez's text message to a TSC board member or her participation in Garza's investigation, both of which she alleges are additional protected activities under the TCHRA. *See* TEX. LAB. CODE ANN. § 21.055.

13

in his report, he also addressed "the more serious allegations that prompted [the] investigation," ultimately concluding that "[n]o evidence has been presented of sexual harassment or harassment because of an individual's race, color, age, gender religion, disability or other protected class affiliation." Thus, contrary to its position on appeal, TSC clearly understood that Hernandez was reporting what she believed to be discriminatory conduct.[2] We conclude that the January 18 email constitutes evidence of a protected activity under the TCHRA. *See* TEX. LAB. CODE ANN. § 21.055.

TSC also argues that the evidence establishes the absence of a causal link between Hernandez's email and TSC's decision not to renew her contract. The Supreme Court of Texas has not decided the appropriate causation standard for a TCHRA retaliation claim. *Alamo Heights*, 544 S.W.3d at 783. The high court has assumed, without deciding, that a plaintiff must demonstrate but-for causation, so we will do the same. *See id.*

It is undisputed that TSC intended to renew Hernandez's contract until Garza issued his report. In other words, any concerns TSC had about the way Hernandez reported her allegations were not sufficient to cause the nonrenewal of her contract. Instead, by its own words, TSC changed its decision *because* Garza investigated Hernandez's complaints of discrimination and determined that they lacked merit. *See*

---

[2] TSC does not contest whether Hernandez's beliefs were "reasonable" under the circumstances. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015) ("[T]o establish an employee opposed a discriminatory practice, the employee must demonstrate a good-faith, reasonable belief that the underlying discriminatory practice violated the TCHRA." (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir.2007))). Viewing the record before us in the light most favorable to Hernandez, we cannot say at this point that Hernandez did not have "a good-faith, reasonable belief" that Frausto and Fuentes violated the TCHRA. *See id.*

*Rock*, 608 S.W.3d at 307 ("[A]n employee can prove discriminatory or retaliatory intent by direct evidence of what the employer did and said." (citing *Garcia II*, 372 S.W.3d at 634)).

TSC argues that its decision was motivated by the results of Garza's investigation, not the protected activity itself. However, "[r]etaliation claims can be actionable under the TCHRA even if the underlying discrimination claim is not." *Alamo Heights*, 544 S.W.3d at 781; *Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.24 (5th Cir. 2000) ("There is no requirement that a plaintiff must prevail on any underlying claim of intentional discrimination in order to prevail on a claim of retaliation."); *see also Lewis v. Lowe's Home Ctrs., Inc.*, No. 13-12-00629-CV, 2014 WL 2937010, at *3 (Tex. App.—Corpus Christi–Edinburg June 26, 2014, no pet.) (mem. op.) (requiring an employee to prove actual discrimination to prevail on a retaliation claim would have a "chilling [effect on] the legitimate assertion of employee rights"). Stated differently, an employer cannot take an adverse employment action against an employee merely because the employer determines that the employee's complaints of discrimination lack merit. *See Alamo Heights*, 544 S.W.3d at 781. Therefore, even if Garza's conclusions are correct, TSC cannot use his investigation as a shield against Hernandez's retaliation claim. *See id.*

Based on TSC's own admissions, we conclude that the record contains some direct evidence of a but-for causal link between Hernandez's protected activity and the adverse employment action. Accordingly, the trial court did not err in denying TSC's plea to the jurisdiction with respect to Hernandez's retaliation claim.

## C. Age Discrimination: Hernandez Failed to Establish a Prima Facie Case that she was Replaced with Someone Significantly Younger

To establish a prima facie case of age discrimination, Hernandez must present

evidence that she was (1) at least forty years old, (2) qualified for her position, (3) terminated by TSC, (4) and replaced by someone significantly younger. *See Tex. Tech Univ. Health Sci. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020) (citing *Garcia II*, 372 S.W.3d at 632). Hernandez was forty-one years old at the time her contract was not renewed. TSC only disputes the fourth element of her claim—that Hernandez was replaced by someone significantly younger.

TSC informed Hernandez that her contract would not be renewed on June 27, 2018, in between academic years. In her declaration, Hernandez alleges she was "replaced" by Samantha Duque, another TSC employee who is twelve years younger, because Duque "assumed the majority of [her] classes in the Fall of 2018."[3] However, Hernandez did not allege that Duque continued to teach her classes in the spring semester, and TSC provided uncontroverted evidence that, on August 20, 2018, it hired Emily Salazar, who is approximately two months younger than Hernandez, to permanently fill Hernandez's former position as a speech instructor.[4]

"[A] terminated employee is not replaced by a person who temporarily assumes the terminated employee's job duties or a person who only takes over a part of those duties." *Rock*, 608 S.W.3d at 310 (brackets omitted) (quoting *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)); *Baker v. Gregg County*, 33 S.W.3d 72, 81 (Tex. App.—Texarkana 2000, pet. dism'd). Rather, "[w]hen a

---

[3] Hernandez testified similarly during her deposition: "[Duque] was teaching about three or four of my classes, and five is a full load, so I would say she had more than half of my classes."

[4] On this point, TSC submitted, among other evidence, the affidavit of President Rodriguez, who testified as follows: "To fill the position of Speech Instructor previously held by Linda Hernandez, TSC hired Ms. Emily Salazar. Ms. Salazar was hired on August 20, 2018[,] and her date of birth is November 21, 1976."

16

terminated employee's job duties are distributed among other employees after termination, those employees do not replace the terminated employee." *Baker*, 33 S.W.3d at 81–82.

Thus, Hernandez's testimony merely establishes that Duque temporarily assumed most of her teaching responsibilities for a single semester, which is not sufficient to show that Duque replaced her. *See Rock*, 608 S.W.3d at 310; *Baker*, 33 S.W.3d at 81. And because Hernandez's actual replacement, Salazar, is not "significantly younger" than her, Hernandez failed to establish that age was a motivating factor in TSC's decision not to renew her contract. *See Flores*, 612 S.W.3d at 305. The trial court erred in denying this portion of TSC's plea to the jurisdiction.

**D.      Gender Discrimination: Hernandez Failed to Establish a Prima Facie Case of Disparate Discipline**

To establish a prima facie case of gender discrimination, Hernandez must present evidence that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). The parties only dispute the fourth element.

Hernandez "was not replaced by someone outside her protected group; thus, she must present evidence of a similarly situated employee who was treated differently than her." *Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 87 (5th Cir. 2019) (per curiam). "The situations and conduct of the employees in question must be 'nearly identical.'"

17

*AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 594 (Tex. 2008) (per curiam) (quoting *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917–18 (Tex. 2005)). The employees should "hold the same job or responsibilities, share the same supervisor or have their employment status determined by the same person[,] and have essentially comparable violation histories." *Wallace*, 777 F. App'x at 88 (cleaned up) (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). But "nearly identical" does not mean "identical," as "a requirement of complete or total identity rather than near identity would be essentially insurmountable." *Id.*

In her declaration, Hernandez alleges that an "outspoken" male colleague on TSC Faculty Senate, Blas Breceda, "almost go into a fist fight with [President] Rodriguez" but was not terminated. Even accepting these allegations as true, Hernandez's declaration lacks key details that would allow us to compare the two employees. For example, Hernandez failed to specify when Breceda's incident occurred or whether the same person determined their employment status. *See Lee*, 574 F.3d at 259 ("Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000))).

Regardless, even if we assume that Breceda and Hernandez were otherwise similarly situated, their alleged violations were "not in the same category of conduct." *See AutoZone*, 272 S.W.3d at 594. Hernandez alleges that Breceda had a near-physical altercation with the TSC president, while TSC alleges that Hernandez made unfounded

18

accusations of "criminal" conduct against two TSC administrators, including sending a text message to a sitting TSC board member before reporting her concerns internally, as required under the Anti-Discrimination Policy. TSC also alleges that Hernandez violated the privacy rights of the accused administrators by unnecessarily copying other faculty and staff members on her email to President Rodriguez. Finally, TSC alleges that Hernandez exceeded her purview as TSC Faculty Senate Speaker and had no authority to initiate a "no confidence" vote before the TSC board. Thus, even if both employees were generally "outspoken," their violation histories were not "nearly identical," and consequently, evidence of Breceda's circumstances does not give rise to an inference that Hernandez's gender was a motivating factor in the nonrenewal of her contract. *See id.* at 594–95 (finding employees were not similarly situated where one employee was disciplined for making an improper comment in front of a customer, and the other employee was terminated for sexual harassment); *cf. Wilder v. Stephen F. Austin State Univ.*, 552 F. Supp. 3d 639, 658–59 (E.D. Tex. 2021) (finding professors were similarly situated where students filed similar complaints against each, but one received an unsatisfactory evaluation, while the other was given a terminal contract).

Therefore, we conclude that Hernandez failed to state a prima facie case of gender discrimination, and the trial court erred in denying this portion of TSC's plea to the jurisdiction.

## IV.    CONCLUSION

We affirm the trial court's order with respect to Hernandez's retaliation claim, and we reverse and render a judgment of dismissal for want of jurisdiction on Hernandez's

age and gender discrimination claims.

GINA M. BENAVIDES
Justice

Delivered and filed on the
26th day of January, 2023.

20